BURGOYNE et al. v. McKILLIP et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1910.)

No. 3,313.

1. ACTION (§ 28*)—FORM—WAIVER OF WRONG—EMBEZZLEMENT—QUASI CONTRACTS.

In case of embezzlement or misappropriation of funds, the person defrauded may at his option assert a demand as on an implied contract to repay.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28.*]

2. BANKRUPTCY (§ 314*)—CLAIMS PROVABLE—QUASI CONTRACTS.

Where a bankrupt has misappropriated funds, the person defrauded at his option could waive the crime, and assert a claim on implied contract, and prove the same in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–490; Dec. Dig. § 314.*]

3. TRUSTS (§ 340*)—BREACH OF TRUST—PROPERTY OF TRUSTEE.

Though a demand may be founded on a breach of trust, the entire estate of the recreant trustee is not thereby necessarily impressed with a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 501; Dec. Dig. § 340.*]

4. BANKRUPTCY (§ 165*)—LIENS—PREFERENCES—EMBEZZLEMENT.

Where the bankrupt, a member of a firm, on being discovered to be a defaulter, executed a trust deed to the creditor, covering his own property, and thereafter was adjudged a bankrupt, the holder of the deed could not, as an ordinary creditor, take and hold the conveyance free from the provisions of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), respecting preferences.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 165.*]

5. BANKRUPTCY (§ 163*)—PREFERENCES—CONSIDERATION.

A bankrupt, having defaulted with reference to funds deposited with his firm to be loaned out for an insurance company, executed a deed of trust of certain of his individual property to secure the defalcation, and in consideration thereof the insurance company released the other member of the firm from further liability for the defalcation. *Held*, that such release was not such a consideration for the transfer as would save it from being a voidable preference, at the instance of the bankrupt's trustee for the benefit of individual creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 163.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Action by Harry L. Burgoyne, as trustee, and another, against Patrick E. McKillip and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

C. C. Flansburg (R. O. Williams and L. A. Flansburg, on the brief), for appellants.

F. A. Brogan (Albert M. Post, on the brief), for appellees.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOOK, Circuit Judge. The firm of McKillip & Swallow were local loan agents in Nebraska of the Union Central Life Insurance Company of Cincinnati, Ohio. Patrick E. McKillip, the senior member, without the participation or knowledge of his partner, converted to his own use a large sum of money intrusted to them by the company for the purpose of making loans on farm property. His conduct being discovered, the company sent Harry L. Burgoyne, its representative, to Nebraska, and McKillip conveyed to him, as trustee, some real and personal property. At the same time an agreement was executed, showing the conveyances were as security for the repayment of the money misappropriated. Swallow relinquished whatever interest he had in the property, and the company released him from further responsibility. Within four months after this transaction, other creditors of McKillip instituted proceedings in bankruptcy against him, he was adjudged a bankrupt in due course, and Royal P. Drake was selected as trustee in bankruptcy. Afterwards Burgoyne, trustee under the mortgage agreement, and the insurance company, as co-complainants, commenced suit against McKillip, his wife, and Drake as trustee in bankruptcy, for the enforcement of the agreement, the sale of the property, and the exclusion of defendants from all interest therein. Drake set up in defense that the transfers of property to Burgoyne for the company were void as preferences under the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The trial court found that McKillip was insolvent when the transfers were made, that he was aware of his financial condition and intended to prefer the company over his other creditors of the same class, and also that the company through its representatives had reasonable grounds to believe a preference was intended. Complainants' bill was therefore dismissed upon the merits, and they prosecuted this appeal.

It is sufficient to say, without reciting the evidence in detail, that we think it fully supports the conclusions of the trial court. There can be no real question about the insolvency of McKillip, or of his intention to extricate himself from his embarrassing position by making good the claim of the company at the expense of his other creditors. And the facts and circumstances of the transaction, including the declarations of McKillip at the time, were well calculated to create a belief in the minds of those who were present as participants that he intended just what naturally resulted from his act. On such an occasion the representatives of a creditor seeking security cannot stop their ears and close their eyes to the obvious significance of things, and then say they did not hear or see and did not understand.

It is contended by complainants there was no preference, because the relation between the company and McKillip was not that of creditor and debtor, the demand of the former was not one provable in bankruptcy, and also that there was a present consideration to sustain the transaction. In case of embezzlement or misappropriation of funds, the person defrauded may at his option assert a demand as upon implied contract to repay, and such a demand is provable in bankruptcy. When the company took from McKillip what was in substance a mortgage upon his property, it clearly did so as a creditor,

and it cannot retain it and at the same time abandon the position then assumed. This is not a case of following trust funds. The property was not conveyed to Burgoyne as the property of the company in which its funds had been invested. It was accepted as the property of the debtor, and as security for the payment of money due the company. The funds of the company were not traced into the property, and there was no reclamation of them as trust funds. Though a demand may be founded on a breach of trust, the entire estate of the recreant trustee is not thereby necessarily impressed with a trust. The holder of the demand cannot, as an ordinary creditor, take and hold transfers of property from the insolvent defaulter free from the provisions of the bankruptcy act respecting preferences. Richardson v. Shaw, 28 Sup. Ct. 512, 209 U. S. 365, 52 L. Ed. 835, is relied on, but it is not in point. It rests upon the peculiar relation between broker and customer in their dealings in stocks, and, under the facts of the particular case, it was held not to be that of debtor and creditor.

There is another matter. The funds of the company were entrusted to McKillip & Swallow, and, though it was McKillip who misappropriated them, the company was entitled to hold the firm and both partners civilly responsible. McKillip alone was adjudged bankrupt, and Blake, the trustee, represents only his individual creditors. Various contentions are made because of this situation; but they are disposed of by the fact that the property transferred to the company belonged to McKillip individually, not to his firm. We approve the finding of the trial court that the property was not partnership assets and that Swallow had no interest in it, though an attempt was made to show he had. It is also contended there was a present consideration for the transaction which prevents its being a preference, in that Swallow, having an interest in the property transferred, abandoned it, and also because the company released him from his civil liability for the money misappropriated by his partner. There is no such consideration in these things as the law contemplates. The property was not Swallow's, nor had he an interest in it, and surely a creditor of a firm, who receives a transfer of the individual property of a partner who is insolvent, cannot, by releasing the other partner from liability, create a consideration that will save the transaction from being a preference, voidable at the instance of the trustee representing individual creditors. By such a contrivance the individual estate, in which the individual creditors have a direct interest, instead of being augmented or maintained at its gross value, would be depleted to their detriment.

The decree is affirmed.

NOTE.—The following is the opinion of W. H. Munger, District Judge, in the court below:

W. H. MUNGER, District Judge. Sufficient of the facts may be briefly stated as follows: The Union Central Life Insurance Company of Cincinnati, Ohio, hereafter called the "insurance company," appointed one W. N. Leonard, of Lincoln, its Western agent, who had charge of its loaning business in Nebraska. Leonard appointed local agents, who solicited and received applications for loans upon real estate, which were forwarded to Mr. Leonard and by him to the insurance company for approval. If the loans were approved

by the insurance company, abstracts of title were procured, mortgages executed to the insurance company, and a draft for the amount of the loan forwarded to the local agent, with directions to pay off all prior liens, if any, out of the proceeds of the loan; the balance to be paid to the mortgagor. Among the local agents were Patrick E. McKillip and Charles H. Swallow, of Humphrey, Nebraska, doing business as McKillip & Swallow, and who did a large amount of business for the insurance company, extending over a period of several years. Upon the receipt of the draft for the mortgage loan, they would discharge prior liens and at once forward the evidence of such prior liens being released. Between April and December, 1907, there was remitted to McKillip & Swallow, for mortgages which had been received, approximately $55,000, with directions to pay off certain prior incumbrances out of the funds: the balance to be turned over to the respective mortgagors. The money was received by McKillip & Swallow in the form of drafts, which were deposited to their account in a bank at Humphrey. This money was not, however, applied in the discharge of liens or paid to the mortgagors, but was converted by said McKillip to his own use, and chiefly used by him in paying off incumbrances upon land which he owned, and in the purchase of real estate. During this period, Mr. Leonard, not receiving evidences of the releases of prior liens, repeatedly communicated with McKillip with respect thereto, by letter and telephone, and was assured by him upon each occasion that the matter would receive immediate attention. Thus the matter drifted until December, 1907, when Mr. Leonard sent an agent to examine the county records to see if the liens had been paid and discharged. The agent reported to Mr. Leonard that the records did not show the discharge of such liens. Mr. Leonard immediately communicated the facts to the insurance company, and the company sent Mr. Harry L. Burgoyne, complainant, an attorney of the company, to Lincoln to look after the matter. After a conference at Lincoln between Mr. Burgoyne, Mr. Leonard, and the local attorney for the company, in which the question of securing the amount was discussed, the advisability of instituting an attachment suit, and otherwise, it was finally determined that they would go to Humphrey and call upon Mr. McKillip. They left Lincoln for that purpose, and met Messrs. McKillip and Swallow at Columbus, where the matter was discussed, and Mr. McKillip then and there admitted that he had converted the funds to his own use. He expressed a willingness to secure the company against loss, and considerable discussion was had as to the manner in which this was to be done. Mr. McKillip strenuously objected to giving a mortgage directly to the insurance company, or to any person known in that community to be connected with the insurance company, for the reason that such an act would indicate to his other creditors that he was largely indebted to the insurance company and would seriously impair his credit. Negotiations between Mr. McKillip and the representatives of the insurance company were not completed until a day or two following, at a conference in Lincoln. It finally resulted in Mr. McKillip executing the deed in question to Mr. Burgoyne, and transferring to him certain securities, consisting of notes. It was expressly agreed that Mr. Burgoyne's residence was not to be stated in the deed, as to do so might indicate to other creditors and parties with whom Mr. McKillip was dealing that he might have some connection with the company; Mr. McKillip's expressed desire being that the record of the transaction should indicate nothing but a sale of the real estate by him in the usual course of business. In pursuance of this arrangement, the deed in question was executed by McKillip and wife to complainant Burgoyne, to secure the insurance company for moneys thus received and appropriated by McKillip. Mr. Burgoyne gave back an instrument, which may be termed a "defeasement," which instrument expressed, among other things, that the deed had been given to secure an indebtedness to the insurance company, and authorized Mr. Burgoyne, with the approval of Mr. McKillip up to a certain date, to sell the real estate and apply the proceeds to the expenses and discharge of the indebtedness to the insurance company. If the indebtedness was not discharged by the date named, then Mr. Burgoyne was authorized to sell the real estate, without the approval of Mr. McKillip, and upon payment of the indebtedness Mr. Burgoyne was to reconvey the premises, or what remained unsold, to Mr. McKillip. The deeds to Burgoyne were to be placed of record; but it was ex-

pressly agreed that the defeasement instrument was not to be placed of record unless future events should render it necessary in order to perfect a good title. Within four months after the execution of the deed, upon petition of certain creditors of defendant McKillip that he be adjudged a bankrupt, hearing was had and judgment was rendered in accordance with the prayer of the petition, adjudging McKillip a bankrupt. Complainants have brought this action to have the trust provisions of the instrument referred to as a defeasement instrument enforced, or, in case they cannot be enforced and the instrument shall be held to be a mortgage simply, that it be foreclosed as an ordinary mortgage and the premises sold.

I have no doubt that, under the law of Nebraska, the transaction in question was a mortgage of the real estate by McKillip to Burgoyne, as trustee, to secure the indebtedness from McKillip to the insurance company, and, unless it can be avoided by the trustee in bankruptcy of McKillip, complainant is entitled to a decree of foreclosure. The trustee in bankruptcy urges the invalidity of the mortgage for the reason that it was a preference, voidable under the bankrupt law. While the insurance company could have undoubtedly maintained an action against McKillip & Swallow, I have no doubt that they could have also maintained an action against McKillip as for money had and received, and that, at the time in question, McKillip was a debtor to the insurance company in approximately the sum named. To constitute this mortgage a preference, to be avoided by the trustee, it must appear that it was given by McKillip with the intent on his part that it should be a preference, and it must have been received by the insurance company with knowledge of facts which would reasonably cause the insurance company to believe that a preference was intended. McKillip, at the time of giving this mortgage, was hopelessly insolvent. His assets, at a fair valuation, were so much less than his liabilities, that it must be presumed that he knew he was insolvent. The mere conveyance, however, of property by a debtor to his creditors while insolvent, does not constitute a voidable preference, unless the evidence, as before stated, shows an intent upon the part of the debtor at the time to give to the creditor a preference over other creditors. While it may truthfully be said that the real moving cause, upon the part of McKillip, to give the mortgage in question was to avoid a criminal prosecution for embezzlement, yet I cannot escape the conclusion that the effort which he successfully made to have the security given in the form of an absolute conveyance to a stranger, for the express purpose of deceiving other creditors, sufficiently evidences an intent upon his part to give to the insurance company a preference over his other creditors, knowing, as I think he must have known, of his hopeless insolvency and his inability to pay all his creditors in full, and that the real truth of the transaction was thus concealed to enable him to conduct his business in the ordinary way until such time at least that the four-months period under the bankrupt law would have run.

The fact that the insurance company knew that he had embezzled this large sum of money, converted it to his own use, and the fact that they had knowledge of his desire to keep from his other creditors the fact of his indebtedness to the insurance company, are facts which, to my mind, would have put an ordinarily prudent person upon inquiry, and such inquiry would have disclosed his insolvency and his intent to prefer the insurance company in the transaction. The insurance company made no inquiry as to the extent of his indebtedness, or the value and amount of his property, but simply accepted his own statement that he was worth at least $100,000 above his indebtedness. McKillip having confessed his criminality, I do not think the insurance company was justified, under all the facts, in relying upon this general statement by him as to his solvency. I am therefore of the opinion that the mortgage was a preference, which may be avoided by the trustee in bankruptcy, unless it can be sustained upon the doctrine that this fund of the insurance company, which was converted by McKillip, being trust funds, the insurance company had an equity lien upon his general estate for the amount.

The property turned over to the insurance company by McKillip as security was not a part of the fund received by McKillip from the insurance company, nor does it appear from the evidence that the property given by McKillip to the insurance company as security was purchased with the funds of the insur-

ance company. I do not think the equitable rule, at least as administered by the federal courts, is as broad as argued by counsel for complainant. I think the equitable rule is as stated by the Court of Appeals of the Ninth Circuit, in Spokane County v. First Nat'l Bank, 68 Fed. 979, 16 C. C. A. 81, by the Eighth Circuit in John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422, and by the Sixth Circuit in Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100, which announce the rule as stated by Riner, Judge, in John Deere Plow Co. v. McDavid, supra, as follows: "The owner of a fund which has been misappropriated by one who held it in trust cannot follow it in the hands of the trustee, unless he can trace the trust fund in kind or in specific property into which it has been converted, or, if the fund has been mingled with the trustee's other property, to establish a charge on the mass of such property for the amount of this fund. In other words, he can secure a preference out of the proceeds of the estate of the insolvent only where he can trace the trust property or fund, in its original or some substituted form, in the estate which comes into the hands of the trustee."

In this case, as stated, complainant has not satisfactorily, at least to my mind, traced any of the trust funds to the property in question; nor do I think, under the evidence, the insurance company could have established an equitable lien upon the entire estate of McKillip at the time of the giving of the mortgage. Hence they did not surrender a general equitable lien for a specific lien, and are not protected by the rule that a change or substitution of securities is not a preference, voidable under the bankrupt law. While undoubtedly Mr. Swallow was equally liable to the insurance company, I cannot think their release of him places them in any better attitude. It is apparent that he was regarded as a person of no financial responsibility. I do not think he had an interest in any of the property which McKillip gave as security, and while the release of Swallow might be a good consideration by itself for a mortgage given by McKillip to the insurance company, we are not dealing with the question of consideration. The liability of McKillip to the insurance company was sufficient consideration for the mortgage. The release of Swallow was not such a present consideration as to avoid the character of the transaction being a preference. McKillip's estate was not benefited thereby, and I do not believe a preference can be avoided by simply releasing a codebtor under such circumstances.

As the trustee in bankruptcy has not asked for affirmative relief, the judgment of the court is that complainants' bill be dismissed for want of equity.