UNION CENT. LIFE INS. CO. OF CINCINNATI, OHIO, et al. v. DRAKE.

DRAKE v. BURGOYNE et al.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1914.)

Nos. 4003, 4005.

*(Syllabus by the Court.)*

1. SUBROGATION (§ 17*)—RIGHTS OF MORTGAGEE—PAYMENT OF PRIOR LIEN.

Where money is lent in reliance upon an express promise and representation or contract of the mortgagor that it shall be used to discharge existing incumbrances upon the borrower's property and that the lender is to be secured by a first lien upon that property, and by reason of the breach of the agreement or the making of the representation false by the borrower it becomes necessary for the lender to pay the existing in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cumbrances in order to make his mortgage a first lien, and he does ·pay them and cause them to be released, he has the right in equity to subrogation to the rights of the holders of those incumbrances as against the borrower or his assignee in bankruptcy, or any other party who has not been induced to change his relation to the mortgaged property to his injury in reliance upon the releases.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 44–46, 59, 91; Dec. Dig. § 17.*

Subrogation to rights of mortgagees, see note to Rachal v. Smith, 42 C. C. A. 304.]

2. EQUITY (§ 65*)—BAR TO RELIEF—UNCONSCIONABLE ACTS.
One who has been guilty of bad faith, fraud, or any unconscionable act in the transaction which forms the basis of his claim is entitled to no relief in equity on account of the transaction. "He who has done iniquity cannot have equity."

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. § 65.*]

3. JUDGMENT (§ 713*)—RES JUDICATA—SECOND SUIT.
When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

4. JUDGMENT (§ 713*)—ESTOPPEL—SECOND SUIT.
When the second suit is upon a different cause of action but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action, but it is not conclusive relative to other matters which might have been, but were not, litigated or decided.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

5. JUDGMENT (§ 951*)—ESTOPPEL—IDENTITY—BURDEN OF PROOF.
Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1808–1812; Dec. Dig. § 951.*]

6. JUDGMENT (§ 725*)—ESTOPPEL—IDENTITY OF CAUSES.
The true test of the identity of causes of action is the identity of the facts essential to their maintenance.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1255–1257; Dec. Dig. § 725.*]

7. ACTION (§ 53*)—SPLITTING CAUSES OF ACTION—LIENS.
The rules that one seeking to enforce a claim in court must present to it all his grounds for the judgment or decree he seeks or forfeit the right to use them thereafter, and that he may not split his cause of action and present it piecemeal, does not require him to present in a single suit distinct causes of action each of which would authorize independent relief, though they exist at the same time, might be considered together and relate to the same property.

It does not require a plaintiff who has separate liens upon the same

---

real estate each of which would authorize by itself independent relief to present more than one of them in a single suit, although they exist at the same time and might be considered together.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 549–551, 553–623; Dec. Dig. § 53.*]

8. ESTOPPEL (§ 68*)—CHANGE OF CONTENTION—APPLICATION OF DOCTRINE.

The rule that where a defendant has given a specific reason for his refusal to perform his contract or discharge his duty he may not, after suit is brought to compel performance, change his position and defeat the suit upon another ground, is inapplicable to estop a plaintiff who is defeated on one of several independent causes of action from prosecuting the others or to one who has a choice of remedies for a wrong.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

9. ELECTION OF REMEDIES (§§ 5, 11*)—NECESSITY FOR ELECTION—CAUSES OF ACTION—PURSUIT OF WRONG REMEDY.

One may prosecute seriatim or simultaneously consistent independent causes of action or remedies for a wrong until full satisfaction is secured.

And one who is in doubt which of two inconsistent causes of action or remedies for a wrong is the right one may pursue both until he recovers full satisfaction, and, in the absence of facts constituting an equitable estoppel, his pursuit of a wrong remedy or a defective cause of action to defeat will not estop him from subsequently prosecuting the right remedy to victory.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 6, 14; Dec. Dig. §§ 5, 11.*

Validity and finality of election of remedy as affected by mistake, see note to Rankin v. Tygard, 119 C. C. A. 603.]

10. EQUITY (§ 423*)—DECREE—CONDITIONS TO RELIEF.

A court of equity may, in a case where the rules and principles of equity demand it, condition its grant of relief sought by the plaintiff with the enforcement of a claim or equity held by a defendant which by reason of the statute of limitations, an adjudication, or otherwise, the latter could not enforce in any other way.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 986–990, 992–998, 1009–1014; Dec. Dig. § 423.*]

11. JUDGMENT (§ 585*)—ESTOPPEL—LIENS.

A. had three liens on a tract of land, one by subrogation to the lien of the first mortgagee, one by a second mortgage, and one by a third mortgage. He brought suit to foreclose the third mortgage, and his suit was dismissed on the merits because that mortgage evidenced a voidable preference under the bankruptcy law.

Held, the decree of dismissal of the suit upon the third lien did not render the causes of action on his other liens res adjudicata nor estop him from prosecuting them to judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1064, 1067, 1073, 1084, 1085, 1092–1095, 1132; Dec. Dig. § 585.*]

12. BANKRUPTCY (§ 311*)—ALLOWANCE OF CLAIM—ESTOPPEL.

A creditor of a bankrupt who in good faith has received and retained a voidable preference until he is deprived of it by the judgments of the courts at the suit of the trustee has the right thereafter to prove the bankrupt's debt to him as a general creditor, to have his claim allowed, and to receive from the bankrupt's estate the same dividends as other general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the District of Nebraska; Wm. H. Munger, Judge.

Suit by Royal P. Drake, as trustee in bankruptcy of the estate of Patrick E. McKillip against Harry L. Burgoyne and another. From the decree, both parties appeal. Reversed and remanded.

See, also, Burgoyne v. McKillip, 182 Fed. 452, 104 C. C. A. 590; 31 Sup. Ct. 718, 220 U. S. 604, 55 L. Ed. 605.

These are appeals from a decree granting to a second mortgagee who paid prior mortgages, subrogation to the rights of the prior mortgagee as against the mortgagor, and denying a creditor deprived of a voidable preference permission to prove his claim as a general creditor. A statement of the facts is necessary to a clear understanding of the questions of law in controversy. On August 12, 1907, Patrick E. McKillip owned three tracts of land of 40 acres each in Boone county, Neb. Upon each of these forties there was a separate mortgage of $3,200 made by McKillip. On that day he conveyed these tracts to John T. Steffes for his own use and benefit, and Steffes held them in trust for McKillip without any beneficiary interest in them himself. McKillip was a member of the firm of McKillip & Swallow, agents of the Union Central Life Insurance Company, to procure applications for loans on mortgages upon land and to receive from the company and to apply the money borrowed to the payment of prior mortgages on the land so that the mortgages taken to the company should be first liens thereon. McKillip caused Steffes to make an application to the company for a loan of $10,000 upon his mortgage upon the three forties, which was to constitute a first lien upon the three forties, to appoint one Leonard and the firm of McKillip & Swallow, Steffes' agent to procure the loan for the purpose of refunding indebtedness assumed upon said land at the time of the purchase, and to authorize Leonard and McKillip & Swallow, or the insurance company, to pay off prior liens upon the land. The company granted the application, Steffes made his mortgage to the company for $10,000 upon the land, the company on August 14, 1907, recorded the mortgage and sent the $10,000 to McKillip & Swallow with directions to pay off the prior liens upon the land which amounted to $9,600. McKillip withdrew this money from the firm of McKillip & Swallow, diverted it to his own personal use without Swallow's knowledge or consent, and left the mortgage to the insurance company a second lien upon the three forties, subject to the three prior mortgages for the aggregate amount of $9,600. On December 18, 1907, Steffes conveyed the three forties back to McKillip. On December 20, 1907, McKillip conveyed this land, subject to the four mortgages and several other pieces of land and some personal property, to Harry L. Burgoyne, trustee, in trust to secure the payment to the insurance company of the aggregate amount of about $55,000 which he owed that company on account of this and similar transactions. The trust was created and evidenced by deeds and assignments by McKillip to Burgoyne and by a trust agreement dated December 20, 1907, which together in fact constituted a mortgage upon the property described therein, and which hereafter will be spoken of as the mortgage of December 20, 1907. On February 28, 1908, after the A. T. Land & Livestock Company, the mortgagee in the three mortgages, which were respectively first liens upon the three forties, had threatened to foreclose them, the insurance company paid $10,080 to that company to satisfy these mortgages and took and recorded releases of them, thereby making its mortgage for $10,000 thenceforth a first lien upon the land. On April 1, 1908, a petition in involuntary bankruptcy was filed against McKillip. On May 11, 1908, he was adjudged a bankrupt, and on June 8, 1908, Royal P. Drake was elected trustee of his estate.

On July 2, 1908, Burgoyne and the insurance company brought a suit in equity against Drake and McKillip to quiet the title to the property described in the mortgage to Burgoyne, or to procure a decree that it created a lien on the property therein described to secure McKillip's indebtedness to the insurance company superior to the title and claim thereto of the trustee of the bankrupt's estate, and that the property be sold to satisfy that indebted-

ness. Drake answered that the transaction of December 20, 1907, constituted a fraud upon the creditors of McKillip and a voidable preference under the bankruptcy law and prayed that the complaint be dismissed. On October 13, 1909, after a final hearing on the merits, a decree that the complaint "be dismissed for want of equity" was rendered, and on October 10, 1910, that decree was affirmed by this court. Burgoyne v. McKillip, 182 Fed. 452, 104 C. C. A. 590.

On July 7, 1908, five days after Burgoyne and the insurance company brought their suit against Drake, the latter brought this suit against them to avoid the mortgage of December 20, 1907, and to compel the conveyance and delivery of the property therein described and its proceeds to him; but this suit was held in abeyance until the suit of Burgoyne and the insurance company was finally decided, and the pleadings in the record in this suit were not filed until January, 1912. Meanwhile, under a stipulation between the parties, the three forties had been sold for $8,608.59 more than sufficient to pay the mortgage thereon for $10,000 to the insurance company, and this surplus was in the hands of the trustee to abide the result of this suit. Drake filed an amended and supplemental complaint in which he prayed the decree of the court that this $8,608.59 be decreed to be his property as trustee of McKillip's estate to be distributed among the general creditors. The insurance company filed an answer and cross-petition wherein it prayed the payment of this $8,608.59 to itself on the ground that by reason of the payment of the $10,080 in satisfaction of the prior mortgages on the three forties for the purpose of protecting its inferior mortgage of $10,000, it was entitled, as against the trustee of the bankrupt's estate, to be subrogated to the rights of the mortgagee in the three prior mortgages, and it also prayed for leave to file and prove its claim against McKillip as a general creditor upon the surrender of its voidable preference evidenced by the transaction of December 20, 1907. The court below sustained the insurance company's claim to the $8,608.59, and Drake appealed. It denied the insurance company's prayer to be permitted to prove its claim as a general creditor, and the insurance company appealed.

C. C. Flansburg, of Lincoln, Neb. (Leonard Flansburg, of Lincoln, Neb., on the brief), for Union Cent. Life Ins. Co., of Cincinnati, Ohio, and Burgoyne.

F. A. Brogan, of Omaha, Neb. (A. M. Post, of Columbus, Neb., on the brief), for trustee.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). McKillip, the bankrupt, caused Steffes to apply to the insurance company for the loan of $10,000, to represent to it that his mortgage for that sum on the three forties which he held for the exclusive benefit of McKillip, should be a first lien thereon, and that the money derived from it would be applied to the payment of the liens prior to his mortgage of August 14, 1907, and to covenant with the insurance company in that mortgage that the mortgaged property was free and clear of prior liens and that he would warrant the title thereto against them, so that McKillip and the three forties were bound by these representations and covenants as completely as was Steffes. Laying aside the question of res adjudicata, which will be subsequently considered, Drake, the trustee in bankruptcy of McKillip's estate, took these three forties subject to the legal and equitable claims of the insurance company, under which McKillip held them, as against the claim of the insurance company to the $8,608.59, which was realized from them in excess of

the amount required to pay the mortgage for $10,000. He stands in the shoes of McKillip and has no greater or better equity or right in this surplus fund than McKillip, his grantor, had, so that the rights and equities of Drake and the insurance company in this sum of money are the same that they would have been if Drake had owned the property, made the representations and covenants of Steffes, and committed the wrongful acts of McKillip. Hence the first question in this case reduced to its lowest terms is: If a mortgagor induces a mortgagee to loan him $10,000 in consideration of his mortgage on his land that is incumbered by prior mortgages for $9,600, by means of his representation and agreement that he will pay and satisfy those mortgages with the money so borrowed so that his mortgage for the $10,000 shall be a first lien upon his land, and he thereby obtains and then misappropriates the $10,000 to his personal use so that the mortgagee is subsequently compelled to pay, and does pay, $10,080 more to secure releases of the prior mortgages and to make his mortgage a first lien, and the mortgaged property subsequently produces at a lawful sale $8,608.59 more than the amount required to pay the mortgage for $10,000, is the equity of the mortgagor to this surplus fund so superior to that of the mortgagee as to move the conscience of a chancellor to grant him a decree for it? Many reasons occur why this question must be answered in the negative.

[1] In the first place, it is a settled and salutary principle of equity jurisprudence that where money is lent in reliance upon an express promise, representation, or contract of the mortgagor that it shall be used to discharge existing incumbrances on the borrower's property, and that the lender is to be secured by a first lien on that property, and by reason of the breach of the agreement or the making of the representation false by the borrower it becomes necessary for the lender to pay the existing incumbrances in order to make his mortgage a first lien, and he does pay them and cause them to be released, he has the right in equity to subrogation to the rights of the holders of those incumbrances as against the borrower or his assignee in bankruptcy, or any other party who has not been induced to change his relation to the mortgaged property to his injury in reliance upon the releases. Memphis & Little Rock R. R. v. Dow, 120 U. S. 287, 301, 7 Sup. Ct. 482, 30 L. Ed. 595; Cumberland Building & Loan Ass'n v. Sparks, 111 Fed. 647, 651, 652, 49 C. C. A. 510, 514, 515; In re Lee, 182 Fed. 579, 582, 105 C. C. A. 117, 120; Platte Valley Cattle Company v. Bosserman Gates Live Stock Co., 202 Fed. 692, 696, 121 C. C. A. 102, 106, 45 L. R. A. (N. S.) 1137, and cases there cited; Union Mortgage Banking & Trust Co. v. Peters, 72 Miss. 1058, 18 South. 497, 30 L. R. A. 829, 833; Skinkle v. Huffman, 52 Neb. 20, 71 N. W. 1004.

[2] In the second place, Drake, the trustee in bankruptcy, is the actor in this suit. He stands in the shoes of the mortgagor and subject to the equities of the insurance company against McKillip so that he, whose grantor in violation of his representation, covenant, and promise, by means of which he procured the $10,000 of this insurance company and then diverted that money to his personal use and compelled the company to pay out $10,080 more to make its mortgage a

first lien, thereby causing it an irreparable loss, for he is insolvent, and even if the company secures the $8,608.59 it must still lose by his misappropriation, brings this suit and appeals to a court of equity to set its seal of approval upon the iniquity of his grantor and to render its decree to carry it into effect and to take from the insurance company that which by right of subrogation ought in equity to be its property. "He who has done iniquity cannot have equity," and, "He who comes into a court of equity must come with clean hands," are familiar maxims in equity. And the rule that one who has been guilty of bad faith, fraud, or any unconscionable act in the transaction which forms the basis of his claim is entitled to no relief in equity on account of that transaction forbids such a decree. 1 Pomeroy's Equity Juris. §§ 397, 398, 400; Manhattan Medicine Co. v. Wood, 108 U. S. 218, 227, 2 Sup. Ct. 436, 27 L. Ed. 706; Marble Co. v. Ripley, 10 Wall. 339, 357, 19 L. Ed. 955; Michigan Pipe Co. v. Fremont Ditch Pipe Line & Reservoir Co., 111 Fed. 284, 287, 49 C. C. A. 324, 327. So it is that the equity of the insurance company in the surplus fund in controversy is so vastly superior to the supposed equity of the trustee in bankruptcy, if he have any, and that equity appeals to the conscience of a chancellor with such compelling power, in view of the facts of this case and of the principles of equity to which reference has been made, that it must be sustained unless some inviolable rule of law or equity presents an insuperable obstacle to such a disposition of the controversy.

[3] Counsel for the trustee contends, however, that the suit of the insurance company and Burgoyne against Drake, the trustee in bankruptcy, and the judgment of dismissal thereof, have rendered the issue whether or not the company's equity in the surplus fund by virtue of its subrogation to the rights of the first mortgagee is superior to the equity of the trustee in bankruptcy therein, res adjudicata and has estopped it from obtaining in this suit the relief granted to it by the court below. The two suits are between the same parties. The rules of estoppel by which this contention must be tested are: When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former.

[4] When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action, but it is not conclusive relative to other matters which might have been, but were not, litigated or decided. Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Grider v. Groff, 202 Fed. 685, 689, 121 C. C. A. 95, 99; Linton v. Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54, 57; Commissioners v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87, 91; Board v. Sutliff, 38 C. C. A. 167, 171, 97 Fed. 270, 274; Southern Pac. Co. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Southern Minn. Ry. Extension Co. v. St. Paul & S. C. R. Co., 55 Fed. 690, 5 C. C. A. 249.

[5] Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action. Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214; Ætna Life Ins. Co. v. Board of Commissioners, 54 C. C. A. 468, 474, 117 Fed. 82, 88; Cromwell v. County of Sac, 94 U. S. 351, 359, 24 L. Ed. 195; Nesbit v. Independent District, 144 U. S. 610, 619, 12 Sup. Ct. 746, 36 L. Ed. 562; Railway Co. v. Leathe, 84 Fed. 103, 105, 28 C. C. A. 279, 281; Harrison v. Remington Paper Co., 140 Fed. 385, 400, 401, 72 C. C. A. 405, 420, 421, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314.

Counsel for the trustee assert and counsel for the insurance company deny that this suit is upon the same cause of action as was the former suit, and that it is therefore governed by the first rule cited above. The insurance company and Burgoyne brought the first suit to obtain a decree that the mortgage of December 20, 1907, made by McKillip to Burgoyne to secure the debt of McKillip to the insurance company, was valid and should be foreclosed. In their complaint they allege that on December 20, 1907, McKillip was indebted to the insurance company in the sum of $55,000 on account of his misappropriation of the $10,000 it had sent him in August, 1907, to pay off the three prior mortgages on the three forties he mortgaged to it, and on account of his misappropriation of other moneys sent him to pay off other liens on other property in similar transactions, that McKillip made the mortgage of December 20, 1907, to Burgoyne to secure the payment of the debt due to it from him and to secure the repayment of any moneys it might pay to discharge liens prior to its mortgages and to make its mortgages first liens, that in February, 1908, it paid $45,940 for this purpose (a part of which was the $10,080 paid to obtain releases of the prior liens on the three forties), and that the amount due it from McKillip at the time of the filing of the complaint July 2, 1908, was $52,399.99, and they prayed that the legal title to all the property described in the mortgage of December 20, 1907, be quieted in Burgoyne under and by virtue of that mortgage, that the amount due to the insurance company from McKillip be adjudged, and that the property described in the mortgage of December 20, 1907, be sold and the proceeds applied to the payment of that debt.

In his answer to this complaint Drake, the trustee, denied that he had knowledge or information regarding the facts alleged with reference to the indebtedness of McKillip to the insurance company, and he averred that the mortgage of December 20, 1907, was made to defraud the creditors of McKillip, and that it constituted a voidable preference under the bankruptcy law, and he prayed that he be dismissed from the suit and that he recover his costs. After a full hearing his prayer was granted, he was dismissed from the suit on the ground that the mortgage of December 20, 1907, constituted a void-

able preference, and a decree was rendered that the complaint of Burgoyne and the insurance company be dismissed and that Drake recover of them his costs without more.

Five days after the former suit was commenced, Drake, the trustee, brought this the second suit to recover from Burgoyne and the insurance company the property which had been conveyed to Burgoyne by McKillip by the mortgage of December 20, 1907. In his final amended and supplemental complaint which was not filed until after the decision of the former suit, he set forth a description of the property which was conveyed to Burgoyne by means of the mortgage of December 20, 1907, alleged that the transaction evidenced by that mortgage constituted a voidable preference under the bankruptcy law, that the courts had so decided in the former suit, that the insurance company would claim the $8,608.59 surplus after paying the mortgage debt for $10,000 out of the proceeds of the sale of the three forties by right of subrogation to the liens of the first mortgages which it paid, but that it was not entitled to that surplus because it took releases instead of assignments of those mortgages and because its right to this surplus fund by subrogation was adjudged against it in the former suit, and he prayed that the mortgage of December 20, 1907, be adjudged a voidable preference, and that he recover all the property and its proceeds mortgaged to Burgoyne so that he might distribute it among the general creditors of the bankrupt estate.

In its answer the insurance company set forth the facts on which it relies for subrogation to the rights of the first mortgagee to these liens on the three forties, denied that it set up the payment of the $10,080 for the release of the first mortgages, and asked to be subrogated to their liens in the former suit, and denied that there was any such issue or any adjudication of any such issue therein, but alleged that it set forth in its pleading in that suit the various amounts, including the $10,080, aggregating together about $50,000 which it paid after December 20, 1907, to obtain releases of first mortgages on various pieces of property covered by the mortgage of that date for the purpose of showing its good faith and its attempt to save the mortgaged property from appropriation by third parties, and that on the 12th day of September, 1910, with the permission of the bankruptcy court, it commenced a suit in the district court of Boone county, Neb., to foreclose its mortgage of $10,000 upon the three forties and to be subrogated to the rights of the first mortgagee thereon, and that thereafter the land was sold by the trustee in bankruptcy herein and the proceeds were applied first to the payment of the mortgage for $10,000, and that there remained this surplus fund of $8,608.59 which was held pursuant to the stipulation of the parties to abide the result of this suit. The insurance company prayed that in case the court should grant the prayer of the plaintiff and should adjudge the mortgage of December 20, 1907, to be void, it should also adjudge that the insurance company was entitled to the surplus fund realized from the sale of the three forties.

This review of the pleadings in the two suits discloses these facts: When these suits were brought, and when the former suit was tried,

the insurance company had a first lien on the three forties for $10,080 by virtue of its subrogation to the rights of the holder of the three first mortgages upon it which it had paid, it had a second lien upon them for $10,000 by virtue of Steffes' mortgage to it of August, 1907, and it had a third lien upon them and upon a large amount of other property for about $50,000, the indebtedness of McKillip to it by virtue of the mortgage of December 20, 1907. The former suit was brought by the insurance company to sustain and foreclose this mortgage which evidenced the third lien upon the property. The present suit was brought by the trustee in bankruptcy to recover from Burgoyne and the insurance company the property which had been conveyed to them under the mortgage of December 20, 1907, for the reason that that mortgage constituted a voidable preference, and the partial defense to this suit here presented is: (1) The subrogation of the insurance company to the rights of the holder of the first liens upon the three forties and upon their proceeds thereof, and (2) "He who seeks equity should do equity," and a decree for any relief to the trustee ought to be conditioned by the requirement that he pay the surplus fund of $8,608.59 derived from the three forties to the insurance company because this fund was produced and brought into the estate of the bankrupt by virtue of the insurance company's payment of the $10,080 to obtain releases of the first liens upon these tracts of land.

The pleadings in the former suit neither aver nor deny the existence of these defenses nor of the causes of action in favor of the insurance company on which they rest. It is true that in the pleading and evidence in that case the entire history of the transactions of the parties is detailed and that there were statements in the briefs of counsel for the company to the effect that, even if the mortgage of December 20, 1907, was held void, the court should give it a lien upon all the property covered by it for the amount advanced by it under that mortgage for the purpose of paying off prior liens amounting to about $40,000. But there was no pleading of or prayer for a subrogation of the insurance company to the rights of the first mortgagee to his liens upon the three forties, and evidence without pleading is as futile to sustain an adjudication of an issue as pleading without proof.

[6] Moreover, the true test of the identity of causes of action is the identity of the facts essential to maintain them. Harrison v. Remington Paper Company, 140 Fed. 385, 400, 72 C. C. A. 405, 420, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314. It was a fact indispensable to the maintenance of the cause of action in the former suit that the mortgage of December 20, 1907, was made and delivered, but that fact is immaterial to the cause of action for subrogation in the present suit. It was indispensable to the cause of action in the former suit that the mortgage of December 20, 1907, did not constitute a voidable preference, but that fact is immaterial to the cause of action in this suit. It was a fact indispensable to the cause of action for subrogation in this suit that the insurance company had the mortgage for $10,000 on the three forties in February, 1908, when it paid the prior mortgage, but that fact was immaterial to the cause of action in the

214 F.—35

former suit. It was a fact indispensable to this suit that the insurance company paid the $10,080 on account of the liens prior to its mortgage upon the three forties, but that fact was not essential to the cause of action in the former suit, because, without that, the indebtedness of McKillip to the insurance company was greater than the value of the property mortgaged on December 20, 1907, and that mortgage, if valid, would have swept it all away regardless of the $10,080. The facts that a petition was filed and an adjudication in bankruptcy rendered against McKillip, that the insurance company had reasonable cause to believe that the mortgage of December 20, 1907, was made with intent to prefer it to other creditors were indispensable to the defense of the former suit, but they constitute no defense and are immaterial to the cause of action and to the defense of subrogation. The amounts involved, the property affected, the relief sought, the times when the causes of action on the mortgage of December 20, 1907, and on the subrogation of February, 1908, to the three prior mortgages, the facts essential to the maintenance and defense of the two causes of action, all differed, and the suit, of which the mortgage of December 20, 1907, was the subject-matter, was not upon the same cause of action as is the present suit, nor did it involve either as a cause of action or a defense the claim of the insurance company to a first lien by subrogation upon the three forties, so that the decree in the former suit constitutes no estoppel of the insurance company from litigating in this suit the issue of its subrogation to the liens of the first mortgagee upon the three forties, or to the issue of its superior equity in the $8,608.59 by reason thereof, for the record fails to prove that either of those issues was ever actually or necessarily litigated or determined in the former suit.

[7] And here is the answer also to the contentions that the insurance company is estopped from defending this suit on the ground of its subrogation to the rights of the holder of the first liens on the three forties by the familiar rules that a litigant must present every point and claim relative to the subject-matter of the litigation, and that he may not split his cause of action, and that if he fails to comply with either rule he may not litigate his omitted claim in a subsequent suit, for the subject-matter of the litigation within the meaning of these rules is the matter at issue, the cause of action in the former suit, and these rules fail to estop one from subsequent litigation of claims and issues not relevant to the cause of action or issue presented in the former suit. They do not estop one who has litigated one of several separate and independent causes of action relating to the same property from subsequently litigating the others, as where one has a mechanic's lien and a mortgage, or several mortgages upon the same property. The insurance company had three separate causes of action upon three separate liens—its lien by subrogation, its lien by the mortgage for $10,000, and its lien by the mortgage for about $50,000 upon the three forties and other property. The third lien originally valid was subsequently avoided by the bankruptcy proceedings against McKillip. It brought its former suit on that lien alone

and was defeated by the bankruptcy proceedings and the voidable preference, facts which constituted no defense to its first and second liens, and the judgment against it was no bar to its maintenance of its cause of action by subrogation or to its maintenance of its cause of action on its mortgage for $10,000. The principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by the pleadings or the proofs, or both, all the grounds upon which he expects a judgment in his favor, and is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail, does not require distinct causes of action; that is to say, distinct matters, each of which would authorize by itself independent relief, to be presented in a single suit, though they exist at the same time, and might be considered together. Stark v. Starr, 94 U. S. 477, 485, 24 L. Ed. 276; The Haytian Republic, 154 U. S. 118, 125, 14 Sup. Ct. 992, 38 L. Ed. 930; Johnson & Johnson v. Herold (C. C.) 161 Fed. 593, 598. Cases like those cited by counsel for the trustee of decrees in suits wherein the defendants were summoned to present all their claims to property against which the plaintiffs demanded decrees adjudging perfect titles to those who should thereafter claim the land under them, such as Dowell v. Applegate, 152 U. S. 327, 341, 14 Sup. Ct. 611, 38 L. Ed. 463, National Foundry Co. v. Oconto Water Supply Co., 183 U. S. 216, 237, 22 Sup. Ct. 111, 46 L. Ed. 157, Stover v. Tompkins, 34 Neb. 465, 467, 51 N. W. 1040, and Rector v. Rotton & Rotton, 3 Neb. 171, 178, which well illustrates this class, wherein a decree of foreclosure and sale of a tract of land was held to be a bar to a subsequent suit by the defendant to recover the land on the ground that it was his homestead when the former suit was brought and adjudged, are readily distinguishable from the case at bar and those of its class above cited, because the defendants were required by the law and practice to present all their claims to the property involved or to have them foreclosed by the proposed decrees in the latter class of cases, while in the former class it was optional with the plaintiffs to present one or more of their distinct causes of action against the property and the defendant, and those which they did not present remained unadjudicated.

[8, 9] Nor was it a fatal objection to the insurance company's maintenance of its lien for the $10,080 upon the surplus fund by subrogation that it had endeavored to collect this amount by the foreclosure of its mortgage of December 20, 1907, and had been defeated by the bankruptcy of McKillip. The rule available in some circumstances, that where a defendant has given a specific reason for his refusal to perform his contract or discharge his duty may not, after suit has been commenced to compel his performance in reliance upon his statement of his reason, change his position and successfully defend on another ground (Railway Company v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Ballou v. Sherwood, 32 Neb. 666, 690, 49 N. W. 790, 50 N. W. 1131; State v. Board of Commissioners, 60 Neb. 566, 570, 83 N. W. 733), is not applicable to this case: First, be-

cause it is founded on an equitable estoppel, and while the insurance company brought a futile suit to foreclose the mortgage of December 20, 1907, the record fails to convince that it ever specified or misled the trustee into the belief to his injury that that mortgage was the only reason it would not surrender the three forties; second, because the rule is inapplicable to cases where the party against whom it is invoked has independent affirmative causes of action and remedies for the wrong it has suffered; and, third, because the controlling rule in cases of the class to which this suit belongs is that even where the victim of a wrong has inconsistent remedies, and he is doubtful which is the right one, he may pursue any or all of them until he recovers through one, and in the absence of facts creating an equitable estoppel, and there are none in this case, his prosecution of a wrong remedy to defeat will not estop him from subsequently pursuing the right one to victory. Rankin v. Tygard, 198 Fed. 795, 806, 119 C. C. A. 591, 602; Bierce v. Hutchins, 205 U. S. 340, 347, 27 Sup. Ct. 524, 51 L. Ed. 828; Thomas v. Sugarman, 218 U. S. 129, 133, 30 Sup. Ct. 650, 54 L. Ed. 967, 29 L. R. A. (N. S.) 250; Standard Oil Co. v. Hawkins, 74 Fed. 395, 398, 399, 20 C. C. A. 468, 472, 473, 33 L. R. A. 739; Barnsdall v. Waltemeyer, 142 Fed. 415, 420, 73 C. C. A. 515, 520; Harrill v. Davis, 168 Fed. 187, 195, 94 C. C. A. 47, 55, 22 L. R. A. (N. S.) 1153; In re Stewart (D. C.) 178 Fed. 463, 468; Nauman Co. v. Bradshaw, 193 Fed. 350, 354, 113 C. C. A. 274, 278.

[10] Finally, this is not a suit by the insurance company for affirmative relief. It is a suit by the trustee to recover the surplus proceeds of the three forties from the insurance company, and, even if there were error in the conclusion that the company was not barred by the decree in the former suit from maintaining an affirmative suit upon its claim of subrogation, a court of equity would not be prevented by the former adjudication from conditioning its grant of relief to the trustee with the requirement that he first allow or pay to the insurance company the $8,608.59 to which it is equitably entitled. A court of equity may always require him who seeks equity to do equity, and in a case in which the rules and principles of equity demand it, as they do in the case at bar, it may condition the grant of relief sought from it by a plaintiff with the enforcement of a claim or an equity held by a defendant which by reason of the statute of limitations or a former judgment the latter could not enforce affirmatively or in any other way. Pomeroy's Equity Juris. §§ 386, 393, note 4; Brent v. Bank of Washington, 10 Pet. 596, 9 L. Ed. 547; Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co., 126 Fed. 46, 51, 52, 60 C. C. A. 588, 593, 594, and cases there cited and reviewed; Central Improvement Co. v. Cambria Steel Co., 201 Fed. 811, 824, 120 C. C. A. 121, 135. There was no error in the provision of the decree which required the trustee to pay or allow to the insurance company the surplus fund derived from the sale of the proceeds of the three forties after deducting the amount required to pay the mortgage of $10,000.

[11] The insurance company complains of that part of the decree which denies its prayer that it be allowed to prove its claim against

McKillip as a general creditor of his estate. Burgoyne and the insurance company brought their suit to confirm and foreclose the mortgage of December 20, 1907, in July, 1908, and in the same month the trustee, Drake, brought this suit to set that mortgage aside as a voidable preference and to recover the property it conveyed. On October 13, 1909, the court below rendered its decree in the former suit and dismissed the complaint on the ground that the mortgage constituted a preference. That decree was affirmed by this court on October 10, 1910 (182 Fed. 452, 104 C. C. A. 590), and the appeal from that decree was dismissed by the Supreme Court on April 17, 1911 (220 U. S. 604, 31 Sup. Ct. 718, 55 L. Ed. 605). In January, 1912, amended and supplemental pleadings were filed in this suit; on December 27, 1912, after final hearing, the court below filed its opinion to the effect that the mortgage of December 20, 1907, be set aside because it constituted a voidable preference and that the trustee recover the property therein described. During this litigation a large portion of this property had been surrendered to and had been sold by the trustee under stipulations that the proceeds should be held to abide the result of this suit, but no surrender of its right to insist upon its claim to this property and its proceeds was made by the insurance company until January 7, 1913, when it offered to surrender them, and prayed that its claim against McKillip be allowed as a general claim against his bankrupt estate. In view of this state of facts, the court below was of the opinion that, if the company had made its surrender immediately after the close of the litigation in the former suit wherein the mortgage was adjudged to be a voidable preference, it would have been entitled to the proof and allowance of its claim as a general creditor, but that because it failed to do so and held on to the property until the opinion in this case was filed in December, 1912, its application so to do should be denied. But the trustee presented no demand and made no prayer for a surrender of the mortgaged property in the former suit. He asked for a dismissal of that suit to foreclose the mortgage only, and the decree therein accordingly left the question of subrogation and many questions of accounting between the trustee and the insurance company upon a surrender of the property mortgaged undetermined, and it was not until this suit was brought to trial that these questions could be legally adjudicated. Thirteen days after the opinion in this suit was filed the insurance company offered to surrender the property it obtained by virtue of its preferential mortgage. That mortgage was taken in good faith to secure a just debt and was valid until a petition in bankruptcy was filed within four months after its execution. The insurance company had the legal and equitable right to hold this mortgage and the property covered by it until the courts having jurisdiction of its claims adjudicated them, their extent and the terms under which it was required, if at all, to surrender its preference. Keppel v. Tiffin Savings Bank, 197 U. S. 356, 363, 25 Sup. Ct. 443, 49 L. Ed. 790.

As we have seen, where one has inconsistent remedies and is doubtful which is the right one, he may pursue any or all of them until he recovers through one, and in the absence of facts creating an eq-

uitable estoppel his unsuccessful prosecution of the wrong one will not prevent him from subsequently successfully prosecuting the right one. Rankin v. Tygard, 198 Fed. 795, 806; 119 C. C. A. 591, 602, and the authorities cited under it above.

[12] And a creditor of a bankrupt who in good faith has received and retained a voidable preference until he is deprived of it by the judgment of a court at the suit of the trustee has the right thereafter to prove the bankrupt's debt to him as a general creditor, to have his claim allowed, and to receive from the bankrupt's estate the same dividends as other general creditors. Keppel v. Tiffin Savings Bank, 197 U. S. 356, 362, 364, 373, 25 Sup. Ct. 443, 49 L. Ed. 790; Page v. Rogers, 211 U. S. 575, 581, 29 Sup. Ct. 159, 53 L. Ed. 332; In re Oppenheimer (D. C.) 140 Fed. 51, 52; In re Otto F. Lange Co. (D. C.) 170 Fed. 114, 116. The insurance company was guilty of no delay or inequitable conduct that deprived it of the benefit of these principles of equity, and the court below should have adjudged that it was entitled to prove and to have its claim allowed against the estate of the bankrupt and to receive in dividends from that estate the same percentage of its claim as other general creditors.

Pursuant to the precedent established in Page v. Rogers, 211 U. S. 581, 29 Sup. Ct. 162, 53 L. Ed. 332, "solely for the purpose of accomplishing this result, the final decree in the case is reversed, and the case is remanded to the District Court to take proceedings in conformity with this opinion."