## In re BLUE BIRD APPLIANCE CO.

### MANDEL et al. v. BURTON.

(Circuit Court of Appeals, Eighth Circuit.   August 22, 1923.)

No. 6296.

1. Bankruptcy ⬳140(3)—Contract held not to create trust fund in hands of bankrupt.

Claimant purchased from bankrupt and paid for a number of washing machines for resale, the contract providing that it might be terminated by either party on 30 days' notice, and that on such termination bankrupt should repurchase all machines unsold by claimant at the original purchase price. *Held*, that the contract created no trust fund which was held by bankrupt for claimant on its termination of the contract.

2. Bankruptcy ⬳140(3)—Trust fund can be recovered from trustee only on proof that it came into his hands.

A trust fund held by a bankrupt can be recovered from his trustee only on proof that the fund came into his hands.

3. Courts ⬳371(2)—Right to recover money from trustee as trust fund not matter of state law.

The right to recover money from a trustee in bankruptcy as a trust fund does not involve any rule of property or construction of a state statute, but a principle of equity on which federal decisions must govern.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

In the matter of the Blue Bird Appliance Company, bankrupt; W. J. Burton, trustee. Oscar Mandel and others, partners, etc., appeal from an order dismissing their petition in intervention. Affirmed.

A. L. Hirsch, L. L. Boehmen, and Abbott, Fauntleroy, Cullen & Edwards, all of St. Louis, Mo., for appellants.

Wilson & Trueblood and George O. Durham, all of St. Louis, Mo., for appellee.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. [1] The Blue Bird Appliance Company was adjudged a bankrupt in the District Court of the United States,

Eastern District of Missouri, on May 16, 1921. Appellants had entered into a contract with said company on the 23d day of January, 1920, under which they purchased from said company 50 washing machines and paid therefor $5,800. The contract provided that it could be terminated by either party on 30 days' notice. After appellants had sold 10 of the 50 machines, they gave notice under the contract of their desire to terminate the same, and demanded of the bankrupt that he pay back the amount they had paid for the 40 remaining machines. To this no attention was paid, and afterwards appellants sold various others of the machines. They asked by petition in intervention in the bankruptcy proceeding that the agreement be construed to create a trust fund in the hands of the receiver of the bankrupt, from which should be deducted the amounts they had received from the actual sale of machines. The contract in question contains this provision:

"The sales agent agrees to sell to the company at the original purchase price, at any time this contract may be terminated by either party, all unsold Blue Bird electric clothes washers purchased from the company that are in as good condition as when received by sales agent, and the company agrees to buy them for cash."

It seems to us that, while the contract designated appellants as sales agent, it was in fact a contract of sale, with an option on the part of the bankrupt to repurchase at the termination of the contract the electric clothes washers at the price paid by appellants. The provision of the contract we have set out refers to the unsold clothes washers *purchased from the company,* and further the company "agrees to buy them for cash." The bankrupt was in no way created a trustee by the contract to hold the money received. Clearly there was a sale, and an agreement for repurchase under certain conditions. The bankrupt breached the clause of the contract with regard to repurchase. There was no trust fund created by the transaction.

[2] However, if under any theory the bankrupt did become a trustee of the money paid to it by appellants, in order to charge the same in the hands of the bankrupt as a trust fund, appellants were required to show that the money received by the bankrupt from them came into the hands of the trustee, either in its original or some substituted form. That is the basis of any equitable lien. Where trust property is commingled with other property, so as to lose its identity, it is not, of course, necessary to do the impossible thing, and identify it or lose the lien; but it must appear, in order to have any basis for a lien, that the property in the hands of the trustee, as said by Judge Taft in City Bank of Hopkinsville v. Blackmore, 75 Fed. 771, 774, 21 C. C. A. 514, 516; "included in its mass either the very thing parted with or its proceeds." Frelinghuysen v. Nugent et al. (C. C.) 36 Fed. 229; Boone County Nat. Bank v. Latimer et al. (C. C.) 67 Fed. 27; Metropolitan Nat. Bank of Kansas City, Mo., v. Campbell Commission Co. (C. C.) 77 Fed. 705, 711; John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422; Burgoyne et al. v. McKillip et al., 182 Fed. 452, 104 C. C. A. 590; In re Dorr, 196 Fed. 292, 116 C. C. A. 112; In re Leigh (D. C.) 208 Fed. 486; Peters v. Bain, 133 U. S. 670, 693, 10 Sup. Ct. 354, 33 L. Ed. 696; Perry on Trusts, §§ 836, 841, 843.

[3] No attempt seems to have been made by appellants to trace any part of the moneys received by the bankrupt from the sale of said washing machines into the hands of the trustee. Appellants present their theory of following the fund as a trust fund under the Missouri decisions. The question does not involve any rule of property or the construction of a state statute, but merely a principle of equity. Hence the federal decisions must govern. John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422; Rapple v. Dutton, 226 Fed. 430, 141 C. C. A. 260. As we view the case, there is no sound theory presented, supported in any way by the record, upon which appellants' contention can be sustained.

The judgment of the trial court is affirmed.