## CITY OF CHICAGO v. PROCTER & GAMBLE CO.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1925.)

No. 4343.

1. **Sales ☞261(6)—Clause in contract for sale of garbage grease, limiting maximum amount of hydrocarbon, held warranty.**

Clause in contract for sale of garbage grease limiting maximum amount of hydrocarbons, *held* to constitute warranty.

2. **Sales ☞262—Objection that warranty limiting maximum amount of hydrocarbons in grease sold was not relied on held without merit.**

Objection that buyer did not rely on warranty limiting maximum amount of hydrocarbon in garbage grease sold *held* without merit, where buyer demanded and received from seller allowance on account of excess hydrocarbon in first shipments.

3. **Sales ☞426—Buyer's recourse for breach of warranty not lost by acceptance, because of agreement fixing remedy.**

Where warranty in contract for sale of garbage grease, limiting maximum amount of hydrocarbon, was breached, acceptance of shipments at agreed reduced price *held* not to preclude buyer from asserting warranty as to subsequent shipments, on theory of an agreement fixing remedy.

4. **Sales ☞285(3)—Defense of lack of notice of breach of warranty held unavailable.**

On breach of warranty limiting hyrocarbon content of garbage grease sold, defense of lack of notice of breach of warranty, provided by Uniform Sales Act (Ohio Gen. Code, § 8429), *held* unavailable where, by agreement, allowance was made for excess hydrocarbon in some shipments and deduction was made by buyer as to others.

5. **Election of remedies ☞7(1)—Buyer by deduction from purchase price held not to have made an election of remedies, precluding reliance on breach of warranty.**

Buyer of garbage grease from city, by making deduction from price paid because of breach of warranty limiting hydrocarbon content, which deduction was approved by city council, *held* not to have made election of remedies, precluding it from relying on breach of warranty in suit by city for purchase price of subsequent shipments, as to which council disapproved similar deductions.

6. **Election of remedies ☞11—Attitude evidenced by legal proceeding to enforce mistaken remedy will not prevent later exercise of proper remedy.**

An attitude evidenced by legal proceeding to enforce a mistaken remedy will not prevent later exercise of a proper remedy.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by the City of Chicago against the Procter & Gamble Company, with cross-petition by defendant. Judgment for defendant, and plaintiff brings error. Affirmed.

Judson Harmon, of Cincinnati, Ohio (Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Frank Dinsmore, of Cincinnati, Ohio (Dinsmore, Shohl & Sawyer and Malcolm McAvoy, all of Cincinnati, Ohio, on the brief), for defendant in error.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. On May 20, 1916, plaintiff below (plaintiff in error here) contracted with defendant, a manufacturer of soap at Ivorydale, Ohio, to sell to the latter all the garbage grease produced by plaintiff at its municipal reduction plant in Chicago during the ensuing eight months. The contract declared it to be plaintiff's intention that the grease should contain by weight not more than 3 per cent. "total impurities" (meaning thereby "all unsaponifiable matter," including "moisture and solid impurities"), and "not more than 10 per cent. of free fatty acids." The contract price of 7.29 cents per pound was "based on grease containing not to exceed 3 per centum of total impurities," and it was provided that "for every pound of total impurities by weight in excess of 3 per centum contained in the garbage grease there should be deducted" from the contract price "a sum equivalent to the value of a like number of pounds of 100 per centum garbage grease, because such amount of 100 per centum  ·  ·  *  is the material that has been replaced by the excess of total impurities," the amount of which was to be determined by analyses made by plaintiff of representative samples taken from each separate car, which analyses were to be considered by both parties correct and final unless objection thereto were made by defendant within ten days after submission to it of the result of the analyses—provision being made in case of dispute for analysis by a mutually selected chemist, as well as for ultimate arbitration. The contract further expressly provided: "In no case will the buyer be required to accept garbage grease containing more than 6 per centum total impurities." This was followed by the separately paragraphed express provision here involved, viz.: "In no case shall the maximum amount of hydrocarbons exceed 3 per cen-

tum." Plaintiff was to render statements by the 15th of each month of the amount of grease delivered during the preceding month and the amount due plaintiff therefor (after deducting for "excess of total impurities" from gross weight), defendant to make payments—except in case of disputed analyses—on or before the 28th of the month.

Eighty-three cars were shipped under the contract. Defendant claimed that all of the first 40 cars contained more than 3 per cent. of hydrocarbons, and that 34 of the same contained total impurities in excess of 6 per cent., and a verbal agreement was reached between the respective representatives of plaintiff and defendant that the latter would pay in full for 8 cars (the weights of which had been adjusted for total impurities), and that the price of the remaining 32 cars (the weights of which had likewise been adjusted) be reduced one cent per pound by reason of the excess in hydrocarbons. Defendant made payment accordingly. This settlement as to the 40 cars was authorized or confirmed by action of the city council. Of the 43 cars thereafter delivered, defendant claims the greater number contained total impurities in excess of 6 per cent. and that all contained hydrocarbons in excess of 3 per cent., and accordingly deducted from its remittances one cent per pound in accordance with its contention that the settlement for the first 40 cars provided therefor. This suit is for the recovery of the one cent per pound on the 43 cars so withheld by defendant, less an item of car demurrage.

Defendant by answer denied any liability, and by cross-petition asked damages for alleged breach of a claimed warranty in the contract provision that "in no case shall the maximum amount of hydrocarbons exceed 3 per centum." The trial court instructed the jury that the alleged verbal contract between the representatives of the respective parties was not binding upon the city as to the cars thereafter delivered and here in question, for the reason that the city council had neither authorized nor ratified the same, but held the 3 per cent. hydrocarbon provision to be a warranty, and submitted the question of damages therefor to the jury, which rendered verdict for defendant—no damages being assessed, evidently because damages of one cent per pound on account of excessive hydrocarbons in the 43 cars wiped out the remnant of purchase price sued for. Judgment for defendant was entered.

[1-4] We think the judgment should be affirmed. The clause, "In no case shall the maximum amount of hydrocarbons exceed 3

per centum," is, to our minds, clearly a warranty. We see no merit in plaintiff's contention that its only purpose was to except from the preceding clause grease containing more than 3 per cent. of hydrocarbons, and thereby permit rejection by the buyer because of more than such 3 per cent., though there might not be more than 6 per cent. of total impurities, and that the provision for reduced price based upon 100 per cent. garbage grease furnished the buyer's only means of compensation. The clause as to the determination of price related ultimately only to the *quantity* of the product. The clause we are now considering is in a wholly distinct paragraph, separated from the price clause by the six per cent. total impurities paragraph. The fact that it is one of a group of provisions under a general heading of "Determination of Price" is thus not controlling. It obviously is a special covenant, inserted to negative the idea that the buyer's only remedy for its breach is that given under the "total impurities" clause. Indeed, if it meant only that, the natural course would have been to combine it in the 6 per cent. clause, instead of putting it in a special and independent paragraph of essentially different wording. The reason for making the per cent. of hydrocarbons the subject of warranty is not hard to find. All other impurities are readily removable and their presence affects only the weight. The hydrocarbons are not removable, and by standard practice their presence, in excess of 3 per cent., renders the *entire product* below commercial standard and reduces the *pound value* of all the garbage grease. The effect of excessive hydrocarbons can be overcome only by decreasing the percentage thereof through addition of a quantity of grease of less hydrocarbon content.

The proposition that defendant did not rely upon the warranty is, we think, without support in the record.[1] The defendant in effect relied upon the warranty when it demanded and received from plaintiff an allowance of one cent per pound on account of excess carbon in 32 of the first 40 cars, in addition to the decrease of pound price for the entire amount of garbage grease contained in those cars. It follows from this construction of the contract that we find no force in the proposition that defendant's rights, founded upon breach of warranty, did not survive acceptance because of the alleged agreement of the parties fixing the remedy. We think the record here precludes the defense of lack of notice of breach of warranty provided by the Uniform Sales Act. G. C. Ohio, § 8429.

[5, 6] Equally without merit we think is the contention that defendant, having deducted one cent per pound on the 43 cars here in question, on the ground of an asserted agreement for such allowance, has made an election of remedies which precludes it from relying upon a breach of warranty. There is here presented no case of changing ground of recovery or "mending hold." We see no inconsistency between defendant's attitude in making its deduction *before suit* from the purchase price of the cars on the ground of plaintiff's alleged recognition of a right thereto—and its relying *after suit* begun upon the right so claimed to have been recognized by defendant. There was substantial testimony of assurance by plaintiff's representatives that the same treatment of the subject of hydrocarbon content would be applied to later shipments. That it failed of legal effect because not authorized or confirmed by the plaintiff's common council, cannot effect a change of ground for relief. So far as appears by its testimony, defendant had no reason to think the council would treat the subject of hydrocarbons in the later 43 cars on a different basis than adopted as to the earlier 32 cars.[2] But, apart from this consideration, an attitude evidenced even by legal proceeding to enforce a mistaken remedy would not prevent the later exercise of a proper remedy. Northern Assurance Co. v. Building Association, 203 U. S. 106, 108, 27 S. Ct. 27, 51 L. Ed. 109; Bierce v. Hutchins, 205 U. S. 340, 346, 347, 27 S. Ct. 524, 51 L. Ed. 828; Union Central Life Ins. Co. v.

---

[1] By the Uniform Sales Act, prevailing both in Ohio and Illinois, in case of breach of warranty by the seller, the buyer may, at his election, accept or keep the goods, and either set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price or may maintain an action against the seller for damages for such breach. Indeed, by the express terms of the contract, the grease became the buyer's property when loaded on the cars by the seller and delivered to the carrier.

[2] Our conclusion that the 3 per cent. hydrocarbon provision amounted to a warranty, and our views already stated as to the effect of such warranty and defendant's rights thereunder, make it unnecessary to consider whether the alleged agreement of plaintiff's representative as to the deduction of one cent per pound for excessive hydrocarbon content in future shipments, was insufficient in law for lack of authority or confirmation by the city council, or whether an agreement of plaintiff to accept defendant's checks for the 43 cars as full payment therefor can be implied from cashing the checks.

Drake (C. C. A. 8) 214 F. 536, 547, 548, 131 C. C. A. 82.

The judgment of the District Court is affirmed.