**TOUCEY v. NEW YORK LIFE INS. CO.***

No. 11228.

Circuit Court of Appeals, Eighth Circuit.

Feb. 24, 1939.

Rehearing Denied March 16, 1939.

*Writ of certiorari denied 59 S.Ct. 1037, 83 L.Ed. ——.

Cornelius Roach, of Kansas City, Mo., for appellant.

Richard S. Righter and Horace F. Blackwell, Jr., both of Kansas City, Mo. (Louis H. Cooke, of New York City, and Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., on the brief), for appellee.

18

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

In 1924 the New York Life Insurance Company issued a policy on the life of Samuel R. Toucey, then aged 45, providing that in consideration of the specified premiums the company would pay $50,000 in case of death and that in case of total and presumably permanent disability occurring before the age of sixty years, further payment of premiums would be waived and $500 a month would be paid during the continuance of total disability. In 1934 the company, in compliance with written application by Mr. Toucey, reduced the policy from the face amount of $50,000 to the face amount of $25,000, with corresponding reductions in all of the other benefits of the policy and also in the amount of premiums. In 1935 the policy thus reduced was lapsed on the books of the company for failure to pay the premium due October 2, 1934.

On October 26th, 1935, Mr. Toucey brought a suit in equity against the insurance company in the federal district court to have the reduction of the policy declared null and void and for a decree reinstating the original policy and adjudging it to be in full force and effect. He alleged in his bill that in April, 1933, as the result of an operation for stomach ulcers he became totally and permanently disabled within the meaning of the policy and that he gave notice thereof in writing to the company and was entitled under the policy provisions to receive $500 per month and to have the payment of premiums waived.

But he alleged "that he did not know his rights under his policy and the coverage thereof" and in July, 1934, before he had reached the age of sixty years and while the premiums on the policy were fully paid up, he called upon the company "to advise him as to the coverage of the policy." That the insurance company, although it well knew of his then existing total disability and his right to the monthly payments and waiver of further premiums, fraudulently and intentionally failed to advise him of his rights under the policy and fraudulently induced him to accept the said reduction of his policy, and also fraudulently induced him to thereafter make a premium payment upon the reduced policy. He alleged that in September of 1935 he was advised by a medical examiner that his policy covered disability benefits for disease and he promptly made demand upon the company for reinstatement of his original policy and for payment of benefits in accordance therewith. He prayed the court to reinstate the original policy and to award recovery for the disability benefits provided therein.

The insurance company having joined issues on the bill, a trial was had extending over several days and the court found upon the evidence that Mr. Toucey was not and had not been disabled within the disability provisions of his policy. In deciding the case, the court said: "I say that the plaintiff has made a most favorable impression upon me. He is a man of capacity and integrity and of high standing, and I believe his testimony fully as to the nature of his malady, but because I do believe him to be a man of great ability intellectually, and of much experience in the business world, I cannot believe, and do not believe that within the meaning of this contract of insurance that we have here, the $50,000.00 policy, I do not believe that he is so disabled by his malady and disease as that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit. In the light of all of the other testimony in this case, of all of the medical testimony, I think it is impossible to come to the conclusion that this plaintiff is so totally and permanently disabled. I can understand his viewpoint. I can understand what I think is the viewpoint of his learned counsel. He certainly is totally disabled, I would think, from carrying on the same kind of a business enterprise as that upon which he was engaged and at which he was very successful. He cannot do that nor anything of that character, but it is an incorrect interpretation of this contract to conclude that if he cannot do what he did do theretofore, he is totally disabled within the meaning of this contract. This contract says that to be totally disabled he must be unable to engage in any occupation whatsoever for remuneration or profit. Now, that means any one of a thousand occupations. I have not the slightest doubt but that the plaintiff has the ability for example, to carry on the occupation of clerk of this court, of the deputy clerk who sits here in this chair, or work of any similar character. I believe that it has not been proved that the plaintiff, within the meaning of this contract, is now or has been at the times alleged in the petition, wholly dis-

abled by bodily injury or disease, so that he is prevented thereby from engaging in any occupation whatever for remuneration or profit, and I think the fact to be that he is not and has not been so disabled. That is finding of fact, I think, No. 2."

The court also found that the insurance company had not in any manner or by any means concealed the fact that the policy contained the provision for indemnity against total and permanent disability from Mr. Toucey, but, on the contrary, the company advised him that it contained such provision, and *"upon the facts and circumstances shown"* Mr. Toucey was conclusively presumed to know the provisions of his policy. The court also found generally that Mr. Toucey was not entitled to the relief prayed for and dismissed the bill with prejudice at plaintiff's costs.

Thereafter Mr. Toucey made an assignment of the policy and his claims thereunder to one James Shay, a resident of the District of Columbia, who instituted an action at law as assignee against the insurance company upon the original policy in the state court in Missouri. In that action, after reciting the issuance of the original policy to Mr. Toucey and the terms thereof, omitting all reference to the reduction that had been made, it was alleged that while the policy was in full force and in April, 1933, before Mr. Toucey had reached the age of sixty years, Mr. Toucey became totally and permanently disabled; that he had performed all the conditions of the policy on his part to be performed and judgment was demanded for accumulated disability installments aggregating $28,000, together with attorney's fees, interest, penalty and costs.

The insurance company, with leave of court, thereupon filed its supplemental bill in Mr. Toucey's equity suit in the federal court, reciting the proceedings which had been had and alleging that the pretended assignment of the policy was without consideration and was a mere sham and pretext to fraudulently avoid the federal jurisdiction and that Mr. Toucey was the real party concerned. The company prayed avoidance of the assignment and for temporary and permanent injunction against the making of any other assignments or the prosecution of the law action or any other proceedings to recover on the Toucey policy. An interlocutory injunction as prayed having been issued upon the verified supplemental bill, Mr. Toucey moved to dismiss the supplemental bill and also moved to dissolve the injunctional order. Both motions having been denied by the district court, Mr. Toucey (who alone was served) has prosecuted this appeal to reverse the order denying his motion to dissolve the injunction.

In this court he has contended:

(1) That jurisdiction of the federal equity court in the equity suit which he brought against the insurance company, was grounded upon the fraud of the insurance company and that the claim he made in that suit for recovery upon the disability provisions of his original policy presented merely a dependent legal issue; that when the court decided against him upon the issue of the fraud it lost jurisdiction to proceed further or to make determination upon the alleged dependent legal issue.

(2) That the district court was prohibited by Section 265, Jud.Code, U.S.C. Tit. 28, Sec. 379, 28 U.S.C.A. § 379, to stay the law action in the state court.

■■ I. It is well settled that "where a bill states a case entitling the complainant to equitable relief, if the proof fails to establish the averments of the bill in that respect, the court is without jurisdiction to proceed further and determine rights that are cognizable in a court of law." 21 C.J. 142. It is also the rule "that where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill, which it turns out cannot, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further, and should dismiss the bill without prejudice. Russell v. Clark, 7 Cranch 69 [3 L.Ed. 271]; Price's Patent Candle Co. v. Bauwen's Patent Candle Co., 4 Kay & J. 727; Baily v. Taylor, 1 Russ. & M. 73; French v. Howard, 3 Bibb (Ky.) 301; Robinson v. Gilbreth, 4 Bibb (Ky.) 183; Nourse v. Gregory, 3 Litt. (Ky.) 378." Dowell v. Mitchell, 105 U.S. 430, loc. cit. 432, 26 L.Ed. 1142.

The illustration of the rule is where it is made to appear in an equity suit brought to foreclose a mortgage or other lien that there is in fact no valid lien enforceable in equity. In such cases, the equity court may not proceed to adjudicate a claim of legal liability upon a promissory note or upon a purely legal obligation unrelated to equitable liens. In such cases, the legal controversy presented is dependent and distinct. Mitchell v. Dowell,

supra; Linden Inv. Co. v. Honstain Bros. Co., 8 Cir., 221 F. 178.

But it was not alleged or claimed in Mr. Toucey's equity bill in the federal court that Mr. Toucey then held any policy which disclosed on its face an obligation of the insurance company to pay him his disability benefits of $500 per month. On the contrary, the verified bill of Mr.. Toucey presented that the policy on which he was relying and which had previously existed, had been first altered and reduced and then had been cancelled for lapse, so that he could not have any recovery upon it at law. His petition to the equity court was to reinstate the whole original policy with all of its life insurance and other benefits. The grounds without which he could not have stated a case for reformation and reinstatement of his policy were the alleged total and permanent disability occurring in April, 1933, exempting him from premium payments after that date and the alleged fraud of the insurance company.

Insofar as Mr. Toucey's prayer for recovery for his disability payments may be regarded as a dependent legal claim, it was a claim dependent upon Mr. Toucey's establishing his right to reinstatement of his entire policy. That right in turn was dependent upon proving the disability occasioning premium waiver and also upon the alleged fraud of the insurance company in respect to said disability. Unless and until the equity court had before it evidence to justify it in finding both the disability and the fraud relating thereto, it could not award judgment. on the disability provisions of the policy. But both of those claims were asserted and in controversy before it and the court of equity was called upon to decide upon both controversies. It did consider the evidence on both issues and we are cited to no case implying that a court of equity lacks power to fully and finally adjudicate all equitable controversies presented by the pleadings and the evidence in a case within its jurisdiction. Its adjudication on each claim in controversy was equally conclusive and binding upon Mr. Toucey.

After that final adjudication had been made and decree entered, a law case for recovery of disability benefits has been ingeniously made out on the face of a petition in the state court by simply omitting the facts as they were established between the parties in the federal equity suit. The pleader has omitted to show that Mr. Toucey made application to the insurance company for reduction of his policy and that pursuant to that application the alteration and reduction of the policy as to premiums and benefits was made and that he had recognized the change in the contract by making a payment of premium at the reduced premium rate. The hope of the plaintiff in the law case manifestly is to frame the pleadings so as to assert a claim of fraud against the company in a subsequent pleading.

The courts of law are not entirely helpless against frauds in law actions and it is not necessary for us to decide whether the company's alleged fraud of concealing from Mr. Toucey the benefits in the policy on account of his alleged disability might not have been so stated that a law court could have submitted his claims to a jury. It could not have done so if he disclosed in a petition in a law case the full truth as it was established in the equity case. But although the methods of presenting and determining controversies and the facts on which they arise may sometimes differ in equity and in law, so long as the identity of the controversies can be discerned, the adjudication in one court concludes them. Having submitted his claims to the equity court in the suit cognizable by that court, Mr. Toucey can not by mere concealment or change of form of procedure obtain an effective adjudication contrary to the adjudication in the federal court. Both his claims to life insurance and to disability benefits under the policy have been settled against him.

## II. Section 265, Judicial Code.[1]

In Equitable Life Assurance Society v. Wert, 102 F.2d 10, submitted at about the same time as the present appeal, this court has considered the effect of section 265 upon the duties and powers of the federal courts relative to actions in state courts and has reviewed the controlling precedents. The section of the statute does not take away the constitutional powers of federal courts as courts of equity nor deprive them of the power and duty to enjoin parties from proceeding in other courts,

[1] U.S.C. Title 28, Sec. 379, 28 U.S.C.A. § 379. "The writ of injunction shall not be .granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

including state courts where such injunctions have become necessary to preserve to litigants the fruits of, or to effectuate the lawful decrees of the federal courts. The question is whether the injunction here issued was necessary and proper to preserve the fruits of and to effectuate the decree rendered in favor of the insurance company and against Mr. Toucey.

 Consideration of the pleadings, the findings of the court and the decree in Mr. Toucey's equity suit against the insurance company makes it plain that the suit was based upon a traditional ground of equity jurisdiction to obtain reformation of a written instrument. Such suits were not maintainable at common law. Traditionally the power to grant such reformation of written instruments has resided exclusively in the courts of equity. When in such a suit the equity court has found the facts justifying such reformation it may make such orders in personam against the parties before it as may be necessary to compel them to effectually and completely reinstate the written instrument and make it conform to the true rights of the parties as found by the court and to accord rights to the parties under the document as reformed, including in a proper case rendition of a money judgment thereon. The orders in personam may be mandatory to compel affirmative action to accomplish the ends of the decree or they may restrain the parties from taking any action to defeat such ends. The equity powers are exerted upon either or both of the contending parties as may be required. If the document should be reformed, the defendant is commanded to take all necessary steps to effect that end. If the party who denies the right to reformation succeeds and defeats the claimed right to reformation of the document, he must be accorded the correlative remedy to effectuate the court's decision. His right is to have an order of the court which will protect him in his decree.

Applying these elemental principles, it is apparent that the insurance company was entitled to be protected in the decree against Mr. Toucey in its favor. As that could only be done by injunction, it was entitled to have Mr. Toucey enjoined from asserting or claiming any right to recover on the $50,000 policy in any court. Unless Section 379, 28 U.S.C.A. supra, limited the federal court's power, such injunction should extend to the action brought in the state court.

It is contended that such limitation on the federal court's power may be deduced from the decisions of the Supreme Court in Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077, and Di Giovanni v. Camden Insurance Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47.

In Kline v. Burke Construction Co., supra, there was an action brought in the federal court by a contractor against a city for the contract price of street paving, and there was also an equity suit brought later by the city against the contractor and his bondsman in the state court in respect to the same paving contract which the city claimed had not been finished. The city demanded an accounting in respect to the finished and unfinished work and prayed judgment for a large amount. Identical issues were joined in the case in the federal court and in the case in the state court. Before final judgment obtained in either court this court directed that the city authorities be enjoined from proceeding with their case in the state court. This, upon the theory that the plaintiff had a constitutional right to have his case tried and decided in the federal court. 8 Cir., 271 F. 605. The Supreme Court reversed. It pointed out as to the two cases pending in the respective courts, that "Both actions were in personam, the ultimate relief sought in each case being for a money judgment only." [260 U.S. 226, 43 S.Ct. 80.] The authorities were reviewed and the Supreme Court concluded that as the two actions were being prosecuted only to obtain a money judgment in personam, the progress of neither suit ousted the jurisdiction of either court. The court said (page 230, 43 S.Ct. page 81), "a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court." "The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity, and where the necessity, actual or potential, does not exist the rule does not apply. Since that necessity does exist in actions in rem and does not exist

in actions in personam, involving a question of personal liability only, the rule applies in the former but does not apply in the latter."

The court also said (page 233, 43 S.Ct. page 82): "The right of a litigant to maintain an action in a federal court on the ground that there is a controversy between citizens of different states is not one derived from the Constitution of the United States, unless in a very indirect sense. Certainly it is not a right *granted* by the Constitution."

 Although the decision firmly settles the duty of a federal court having jurisdiction of a suit for the recovery of a money judgment only to refrain from enjoining the prosecution of a suit for that same purpose in a state court, it indicates no such restriction upon the federal courts in such a situation as is here presented. In this case, as has been pointed out, Mr. Toucey's equity case in the federal court had proceeded to final adjudication. The federal court had heard the evidence and determined that Mr. Toucey had no rightful claim against the insurance company on account of the life insurance policy which he had sought to have reinstated and the court's final decree to that effect had been duly entered. If any necessity had been anticipated the federal court would doubtless have gone through the formality coincident with the decree of ordering Mr. Toucey to bring the policy into court for physical destruction by the marshal and would have admonished Mr. Toucey by appropriate writ or order to assert no claims under it. Such formality was pretermitted, as mere formalities tend to be in these days. But the taking of some such action by the court is necessarily implied in a suit to reinstate a document upon which the plaintiff in the suit is asserting rights against the defendant. Prior to the declaratory judgment acts, neither the courts of law nor the equity courts entertained suits to merely declare the rights of parties independently of some action asked of the courts in respect of those rights. It is apparent, therefore, that unless the court upon adjudging and decreeing that Mr. Toucey had no rights to reinstatement or recovery upon his policy, proceeds further and accords the insurance company some order against Mr. Toucey to effectuate the decree of the court, then the decree would amount to no more than a mere judicial declaration. But the suit was not brought to obtain a decree merely declaratory. The equity jurisdiction which was involved extended not only to the rendition of a decree but to the full and complete effectuation of the decree by court action.

Justice Sutherland wrote the opinion for the Supreme Court in Kline v. Burke Construction Company, supra, and also the opinion of ten years later date in Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. In the latter case, there was occasion to, and the court did, unequivocally affirm the power of the federal equity courts to fully effectuate their adjudications, "notwithstanding the provisions of section 265 of the Judicial Code", (Rev.St. § 720), U.S.C., title 28, § 379 (28 U.S.C.A. § 379). (Page 239, 54 S.Ct. page 697.)

The pleading by which the moving party in that case invoked the jurisdiction of the court was in substance and effect "a supplemental and ancillary bill in equity, in aid of and to effectuate the adjudication and order made by the same court". The Supreme Court said: "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. Root v. Woolworth, 150 U.S. 401, 410–412, 14 S.Ct. 136, 37 L.Ed. 1123; Julian v. Central Trust Co., 193 U.S. 93, 112–114, 24 S.Ct. 399, 48 L.Ed. 629; Riverdale Mills v. Manufacturing Co., 198 U.S. 188, 194 et seq., 75 S.Ct. 629, 49 L.Ed. 1008; Freeman v. Howe, 24 How. 450, 460, 16 L.Ed. 749. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved, and notwithstanding the provisions of section 265 of the Judicial Code (Rev.St. § 720), U.S.C., title 28, § 379 (28 U.S.C.A. § 379). Julian v. Central Trust Co., supra, 112 of 193 U.S., 24 S.Ct. 399; Dietzsch v. Huidekoper, 103 U.S. 494, 497, 26 L.Ed. 497; Root v. Woolworth, supra, 413 of 150 U.S., 14 S. Ct. 136; McDonald v. Seligman (C.C.) 81 F. 753; St. Louis, I. M. & S. R. Co. v. Bellamy (D.C.) 211 F. 172, 175–177; Brun v. Mann [8 Cir.], 151 F. 145, 150, 12 L.R. A.,N.S., 154."

The court made no reference in the case just quoted from to its earlier opinion in Kline v. Burke Construction Co., supra, because in the earlier case the court had confined its consideration to the co-pending suits "for a money judgment only", in neither of which adjudication had been arrived at and where no question of "effectuating adjudication" was involved.

In Di Giovanni v. Camden Ins. Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47, the court considered an injunction directed by this court in an equity suit to cancel, on the ground of fraudulent conspiracy, two fire insurance policies upon which loss had occurred before the suit was brought. 8 Cir., 75 F.2d 808. The policyholder had brought a law action in the state court on each of the two policies, neither of them amounting to three thousand dollars, and he was restrained from proceeding with the suits pending the equity suit in the federal court. The Supreme Court observed that the insurance company could not have maintained a suit in equity to cancel either policy after the loss insured against had occurred (Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440), and found that the right of the insurance company to maintain the suit in equity depended upon "the slender thread of its right to ask the federal court of equity to save it the possible inconvenience of trying two lawsuits instead of one." [296 U.S. 64, 56 S.Ct. 4.] The court concluded that the threatened injury to the insurance company was "of too slight moment" to justify the injunction. It carefully limited its consideration "only to the question whether the equitable relief is warranted". No analogy is presented to the present case in which we are fully persuaded that the order against Mr. Toucey from which he appeals was a necessary and proper order to effectuate and preserve to the insurance company the fruits of the decree in the equity suit which he himself had instituted.

The power and duty of the federal courts to effectuate their decrees and judgments and protect the fruits thereof upon supplemental bills are fully established and exemplified in the following cases, among others: Dugas v. American Surety Co., 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Independent Coal & Coke Co. v. United States, 274 U.S. 640, 47 S.Ct. 714,

71 L.Ed. 1270; Looney v. Eastern Texas R. Co., 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084; Missouri v. Chicago R. Co., 241 U.S. 533, 543, 36 S.Ct. 715, 60 L.Ed. 1148; Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 293, 26 S.Ct. 252, 50 L.Ed. 477; Riverdale Mills v. Alabama & Georgia Mfg. Co., 198 U.S. 188, 25 S.Ct. 629, 49 L.Ed. 1008; Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629; Root v. Woolworth, 150 U.S. 401, 411, 14 S.Ct. 136, 37 L.Ed. 1123; Harkrader v. Wadley, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399; Fiske v. State of Missouri, 8 Cir., 62 F.2d 150; Brown v. Pacific Mutual Ins. Co., 4 Cir., 62 F.2d 711, 713; Sand Springs Home v. Title Guarantee & Trust Co., 8 Cir., 16 F.2d 917; Hickey v. Johnson, 8 Cir., 9 F.2d 498; Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20; Wilson v. Alexander, 5 Cir., 276 F. 875, 881.

Affirmed.

THOMAS, Circuit Judge, concurs in the result.