

PHŒNIX FINANCE CORPORATION v.
IOWA–WISCONSIN BRIDGE CO.
No. 11734.
Circuit Court of Appeals, Eighth Circuit.
Oct. 26, 1940.
Rehearing Denied Nov. 16, 1940.
Writ of Certiorari Granted Jan. 20, 1941.
See 61 S.Ct. 550, 85 L.Ed. ——.

James R. Morford, of Wilmington, Del. (Casper Schenk, of Des Moines, Iowa, Marvel & Morford, of Wilmington, Del., and Zimmerman & Norman, of Chicago, Ill., on the brief), for appellant.

F. A. Ontjes, of Mason City, Iowa, and William C. Green, of St. Paul, Minn., for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a decree entered upon a supplemental and ancillary bill of complaint granting an injunction and other relief intended to protect and effectuate the fruits of a prior decree and orders of the court below entered in a suit in which foreclosure of a mortgage trust deed was denied.

Before analyzing the questions for decision we summarize the background of undisputed facts giving rise to the present controversy.

The appellee, Iowa-Wisconsin Bridge Company, herein called the Bridge Company, is a Delaware corporation. It owns a bridge across the Mississippi river between the states of Iowa and Wisconsin. In 1932 it gave a trust deed conveying all of its property to trustees to secure a $200,000 bond issue. The trustees named in the deed were the Bechtel Trust Company, now called First Trust and Savings Bank, an Iowa corporation, and A. H. Schubert, a citizen of Wisconsin. In 1933, the trustees filed a bill of foreclosure in the district court against the Bridge Company. A receiver was appointed in that suit. The Bridge Company answered. Fayette D. Kendrick, a stockholder in the Bridge Company, and other stockholders, intervened on behalf of the defendant. Upon Kendrick's motion, the appellant, Phoenix Finance Corporation, a Delaware corporation, was by order of court joined as a party plaintiff and as a defendant to the petition of intervention. Appellant owned $177,600 par value of the bonds and was interested in upholding their validity. By order of court the petition of intervention was taken as an answer to the bill. The case was tried before a master who made findings of fact and conclusions of law. All parties filed exceptions to the master's report. After a hearing, the conclusions of the master were modified by the court. The court made findings of fact and conclusions of law, and a decree was entered thereon denying foreclosure. The appellant herein thereupon filed a motion for a rehearing and in the alternative for a modification of the decree. The motion was overruled. See Bechtel Trust Co., et al. v. Iowa-Wisconsin Bridge Co. (Kendrick, et al., Interveners), D.C., 19 F.Supp. 127.

The trustees and Phoenix Finance Corporation, hereinafter called Phoenix, appealed to this court from the decree and from the order overruling the motion for rehearing and for modification of the decree, and the decree and orders of the court were affirmed. First Trust & Savings Bank, et al. v. Iowa-Wisconsin Bridge Co. (Kendrick, et al., Interveners), 8 Cir., 98 F.2d 416, certiorari denied 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420, rehearing denied 305 U.S. 676, 59 S.Ct. 356, 83 L.Ed. 437.

In the bill of foreclosure the trustees alleged: "That all of said bonds were duly made and executed on behalf of the [Bridge] Company, * * * and that all of said bonds, together with interest coupons attached thereto evidencing interest thereon as aforesaid, have now been issued for a good and valuable consideration and are now outstanding in the hands of divers persons and corporations who are now the owners and holders thereof for value." They prayed that an account be taken of the amount due on the bonds and for a deficiency judgment.

The answer of the Bridge Company denied the validity of the deed of trust; alleged that there was a good defense to all or part of the bonds; and prayed that the plaintiffs be required to make a complete showing as to the consideration received by the Bridge Company in each and every instance for the delivery of the bonds. The petition of intervention prayed that the

bill be dismissed and alleged that the bonds and mortgage were fraudulent, without consideration, invalid and void. Phoenix filed an answer to the petition of intervention denying all allegations of fraud.

The final decree contained the following pertinent statement: "That the mortgage and bonds in suit were fraudulently issued. That all bonds are without valid consideration, with the exception of the bonds aggregating $15,000 hereinafter specified."

In 1938 and 1939 Phoenix instituted five separate suits against the Bridge Company in the state courts of the state of Delaware based upon various of the items claimed to have constituted consideration for the bonds held to be invalid in the foreclosure case.

On September 18, 1939, the Bridge Company filed its supplemental and ancillary bill against Phoenix in the foreclosure proceeding reciting the history of the litigation and the commencement of the suits in the state courts of Delaware; alleging that all the matters involved in the cases in Delaware were adjudicated in the foreclosure suit and that Phoenix was threatening to institute and prosecute further actions against the Bridge Company upon similar alleged causes of action; and praying (1) for an injunction restraining Phoenix (a) from further prosecuting the suits already begun, and (b) from bringing further actions, and (2) for a decree commanding Phoenix to dismiss the suits already begun and to satisfy of record a certain $50,000 mortgage involved in the foreclosure suit and to surrender the notes purporting to be secured thereby.

The answer of Phoenix denies that the matters involved in the Delaware actions were adjudicated in the foreclosure suit, alleges that the Bridge Company is indebted to it in the sum of $98,349.46, that it is entitled to an accounting, that the findings and decree in the foreclosure suit are contrary to the facts and are the result of the tactics of the interveners and their counsel in the foreclosure suit in presenting a voluminous and confusing record and in making representations or inadvertent misrepresentations to the court, and that the validity of the bonds and the consideration received by the Bridge Company for them were not litigated but were reserved for determination at a second stage of the proceedings.

Parts of the answer were upon motion of appellee stricken, and the introduction of testimony contradicting the findings and decree in the foreclosure proceeding was denied. The findings and decree were for the Bridge Company, and Phoenix appeals.

All the contentions on this appeal can be disposed of by determining (1) whether Phoenix was such a party to the foreclosure proceeding as that it is bound by the findings and decree entered therein; (2) whether the validity of the bonds and the consideration received for them were adjudicated in the foreclosure case, that is whether the decree in the foreclosure case affirmed by this court is res judicata of the controversies involved in the supplemental and ancillary proceedings; (3) whether the injunction is a violation of section 265 of the Judicial Code, 28 U.S. C.A. § 379, and of the Fifth Amendment to the Constitution; and (4) whether the burden was upon appellee to show that the decree in the foreclosure was a "right" one and not obtained by fraud.

1. Phoenix contends that the decree in the foreclosure case, affirmed by this court, does not constitute an adjudication against it for the reasons (1) that it was only a formal party to that suit and (2) that it was not represented in that proceeding by the trustees.

■ On the issue here presented it is unnecessary to consider the technical capacity of Phoenix as a party in the foreclosure suit. The only question is whether its relation to that suit was such that it is bound and concluded by the decree. We think it is. Even though its name had not appeared on the record at all as a party to the case it was not, in a legal sense, a stranger to the cause. Phoenix as the owner of about ninety per cent. of the bonds, acting within its express rights under the trust deed, requested the trustees to institute the foreclosure suit. The suit was begun and prosecuted by attorneys selected and paid by it. When the validity of the bonds was attacked by the answer and the petition of intervention it participated in the trial and in the proceedings. It filed an answer to the petition of intervention. It filed exceptions to the master's report and a petition for rehearing and modification of the decree; and it appealed to this court. The validity of the bonds held by it was challenged on the grounds of fraud and want of considera-

tion and it had a direct interest in defending them. Its counsel did defend them with exceptional ability.

On this point the case is within the principle "that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it, as an estoppel against an adversary party, as he would be if he had been a party to the record." Souffront v. Compagnie Des Sucreries, 217 U.S. 475, 487, 30 S.Ct. 608, 612, 54 L.Ed. 846; Anderson v. Watt, 138 U.S. 694, 704, 705, 11 S.Ct. 449, 34 L.Ed. 1078; Robbins v. Chicago City, 4 Wall. 657, 71 U.S. 657, 672, 18 L.Ed. 427; Lovejoy v. Murray, 3 Wall. 1, 70 U.S. 1, 19, 18 L.Ed. 129; Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 427, 65 A.L.R. 1125. And when a party takes an active part in litigation in a federal court and its rights are there determined on the merits, "that court has power to protect its decree as against any action which such litigant may take in any other court." Riverdale Cotton Mills v. Alabama & Georgia Manufacturing Company, 198 U.S. 188, 195, 196, 197, 25 S.Ct. 629, 632, 49 L. Ed. 1008.

2. The dispute next turns upon the effect to be given the decree in the foreclosure suit. In considering this issue it should be observed that it has long been the rule in the national courts "that a former judgment between the same parties (or their privies) upon the same cause of action as that stated in the second case constitutes an absolute bar to the prosecution of the second action, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Werlein v. New Orleans, 177 U.S. 390, 397, 20 S.Ct. 682, 685, 44 L. Ed. 817; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329; Davis v. Brown, 94 U.S. 423, 24 L.Ed. 204. It is only when a suit is upon a different cause of action, but between the same parties, that a judgment in the former action operates as an estoppel in the latter only as to every point and question which was actually litigated and determined and is not conclusive as to other matters which might have been, but were not litigated or decided. Union Central Life Ins. Co. v. Drake, 8 Cir., 214 F. 536, 542; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. These rules have been consistently followed by this court. See Handlan v. Walker, 8 Cir., 200 F. 566, 568; Dickinson v. Orr, 8 Cir., 94 F.2d 536, 539; Guettel v. United States, 8 Cir., 95 F.2d 229, 232, 118 A.L.R. 1060; Badger Dome Oil Co. v. Hallam, 8 Cir., 99 F.2d 293, 296; George H. Lee Co. v. Federal Trade Commission, 8 Cir., 113 F.2d 583, 585.

In this case the parties are the same. The only question relates to whether the matters and things litigated are the same. In the case of Toucey v. New York Life Insurance Co., 8 Cir., 102 F.2d 16, 20, 122 A.L.R. 1415, we said: "But although the methods of presenting and determining controversies and the facts on which they arise may sometimes differ in equity and in law, so long as the identity of the controversies can be discerned, the adjudication in one court concludes them." And in Union Central Life Ins. Co. v. Drake, supra [214 F. 545], this court said, "the true test of the identity of causes of action is the identity of the facts essential to maintain them."

It is necessary, therefore, to define the issues tried and determined in the foreclosure suit in order to determine whether the controversies pleaded in the supplemental and ancillary bill can be identified with the controversies adjudicated in the foreclosure decree.

It is urged that in a foreclosure suit the validity of the trust deed only is in issue and the validity of the bonds and the consideration given for them, or the question of fraud inhering in them, are to be determined in a subsequent proceeding. The short answer is that the trustees and Phoenix as well as the Bridge Company elected to litigate all these matters in the foreclosure proceedings, and having done so all parties are bound by the scope of that decree.

It is well settled that in the foreclosure of a mortgage or deed of trust two issues are usually tendered by the plaintiff. First he asks for the foreclosure of the mortgage lien and the sale of the security and, second, he asks to have the

amount of the secured debt established and for a deficiency judgment. The first is an equitable issue and the second a legal one, but the court of equity having taken jurisdiction determines them both. In the foreclosure suit here involved the trustees, acting under the authority expressly conferred upon them by the trust deed, selected a court of equity and therein demanded both remedies. The answer and the petition of intervention traversed both issues, alleging as to both the trust deed and the bonds that they were fraudulently issued. The petition of intervention was more specific and pointed out the nature of the fraud. It alleged that Phoenix and the Bridge Company were dominated and controlled by the same officers; that those common officers in violation of their fiduciary duties to the Bridge Company fraudulently issued the trust deed and the bonds to themselves or to corporations controlled by them for the purpose in brief of fraudulently obtaining ownership of the Bridge Company's property without consideration. Phoenix denied these allegations.

Upon the issues thus joined the burden was on the interveners and the Bridge Company to show such domination and common control. This having been done the burden then rested upon Phoenix, holder of the bonds, and the trustees to show entire fairness in the transaction, including a fair consideration for the bonds. Geddes v. Anaconda Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425. It was upon these issues that the case was tried, and Phoenix, as owner of nearly all the bonds, and its officers and attorneys took an active part. Had they been able in that suit to show that a fair consideration had been paid for the bonds and that the Bridge Company had had the benefit of such consideration all other elements of fraud would have been comparatively trivial. As said in the opinion of this court on the appeal in the foreclosure suit, "The important issue in the case is the question of the sufficiency of the consideration for the $177,600 of bonds issued to Phoenix." [98 F.2d 424.] A mass of evidence was introduced upon that issue, and the court found against Phoenix, declared its bonds invalid and without consideration, and denied foreclosure. In our opinion on the first appeal we summarized the consideration claimed by Phoenix and the trustees to have been paid for the bonds as follows, and it will be found convenient for reference in considering the issue of res judicata here:

To Phoenix in consideration of .
1. In exchange for its mortgage dated March 10, 1931,

| | | |
|---|---|---|
| Principal of mortgage....... | $50,000.00 | |
| Accrued interest ............ | 3,548.56 | |
| Allowance to give 8% yield on bonds .................... | 12,727.31 | |
| | | $ 66,275.87 |
| 2. For advancements under guaranty contract of November 10, 1930, | | |
| To Industrial Contracting Co. ......................... | 10,000.00 | |
| To McClintic-Marshall Co... | 11,262.71 | |
| | | 21,262.71 |
| 3. Paid Kramer & Hogg to discharge mechanic's lien.... | | 9,000.00 |
| 4. Cash ...................... | | 461.42 |
| 5. In exchange for 517 shares of bridge company stock with accrued interest...... | | 60,500.00 |
| 6. As security for | | |
| Payment of taxes........... | $ 3,125.00 | |
| Advancements .............. | 14,610.19 | |
| | $17,735.19 | 20,100.00 |
| To attorneys as security for fee of .............................. | 4,000.00 | 10,000.00 |
| To Anderson for claim of........ | 6,000.00 | 7,400.00 |
| To five claimants for........... | 5,000.00 | 5,000.00 |
| | $15,000.00 | |
| | | $200,000.00 |

With the foregoing rules and the situation described in mind we turn to the controversies alleged in the supplemental and ancillary bill to determine whether or not they may be identified with the facts which were or which might have been adjudicated in the foreclosure decree.

(a) In the supplemental and ancillary bill it is charged, and the answer admits, that in September, 1938, Phoenix filed an action in the Superior Court of Delaware against the Bridge Company in which the alleged cause of action is based upon two promissory notes, one for $2,000 dated December 15, 1932, and one for $3,125 dated January 20, 1933; and the Bridge Company claims that these notes were involved in and were adjudicated in the foreclosure suit.

The record in the foreclosure suit shows that the $2,000 note was a part of the sum of $14,610.19 designated as "Advancements" in item 6 of the foregoing summary, and that the $3,125 note is the

same as the first entry of item 6, referred to as "Payment of taxes". For the total alleged indebtedness under item 6 in the amount of $17,735.19 bonds in the sum of $20,100 were issued to Phoenix. All the claims included in item 6 were considered in the master's report to which exceptions were filed by Phoenix, the Bridge Company and the interveners. The court considered all the exceptions filed by all the parties and decreed "that all bonds are without consideration, except the bonds aggregating $15,000.00 referred to hereafter."

■ Phoenix contends that the decree is wrong with respect to these items; that the record shows that the sums of $3,125 and $2,000 were actually advanced to the Bridge Company, and that the court without the pleading of a counterclaim or offset balanced against them $14,000 which Phoenix owed the Bridge Company for stock fraudulently issued to and held by Phoenix. The claims urged here were all asserted in the foreclosure suit without avail and upon appeal to this court the decree was affirmed. The merits of that controversy can not be re-examined in this collateral attack upon the decree. Root v. Woolworth, 150 U.S. 401, 414, 14 S.Ct. 136, 37 L.Ed. 1123. The adjudication is final and conclusive.

A similar contention was presented to this court in the case of Thornton v. Carter, 8 Cir., 109 F.2d 316, and we there said at page 320 of the report, citing numerous authorities, that "If a judgment or decree of this court which disposes of a case upon the merits has become final, no purpose can be served by considering whether it is right or wrong. A judgment which is wrong, but unreversed, is as effective as a judgment which is right." In Cooper v. Reynolds, 10 Wall. 308, 316, 77 U.S. 308, 19 L.Ed. 931, the Supreme Court said: "It is of no avail * * * to show that there are errors in that record [in a former suit], unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power. This principle * * * takes rank as an axiom of the law." See, also, Manson v. Duncanson, 166 U.S. 533, 547, 17 S.Ct. 647, 41 L.Ed. 1105.

(b) It is next charged that in February, 1939, Phoenix commenced a suit against the Bridge Company in the Court of Chancery of Delaware seeking to recover 517 shares of stock of the Bridge Company which were surrendered and cancelled at the time Phoenix fraudulently procured the issuance to it of $60,500 of bonds (referred to as item 5 in the foregoing summary), which shares the court in the foreclosure suit found and decreed Phoenix was not entitled to have reissued to it. Phoenix admits the commencement of such a suit but contends that there was no issue in the foreclosure suit as to the right of Phoenix to get back the 517 shares of stock.

In the foreclosure suit it was found that the entire transaction involving the exchange of 517 shares of stock for bonds was fraudulent. After the decree in that case was rendered Phoenix filed a petition for rehearing and modification of the decree in which it prayed that the decree be so modified as to reinvest in it the 517 shares of stock. The court denied the petition and this court affirmed.

In the opinion of this court (First Trust & Savings Bank v. Iowa Wisconsin Bridge Co., 8 Cir., 98 F.2d 416, at page 428) we said with reference to this matter, "In refusing to modify the decree to require the bridge company to return to Phoenix the 517 shares of stock surrendered in exchange for bonds the court invoked the maxim that, 'He who hath done iniquity shall not have equity.' * * * In the present case the district court adopted the view that all of the transactions leading up to the issuance of the bonds were steps in a single fraudulent enterprise to obtain ownership of the bridge after a foreclosure. * * * Having determined that the appellants had no standing to maintain their suit, the district court had neither the right nor the duty to compel the bridge company to restore what it had received from the bondholders. This is not a case in which the defrauded party is suing to rescind. Here the fraud has been pleaded only as a defense. * * * when the wrongdoer as plaintiff is attempting to enforce the tainted contract he is turned out of court empty handed." Citing authorities.

■ The question for determination is whether the denial of a restoration under the "clean hands doctrine" by a court having jurisdiction is res judicata or whether the wrongdoer may in a separate suit go into another court and recover the property used by him in perpetrating the fraud denounced by the court which denied restoration. If he may do so it would seem that the clean hands doctrine is

only a bother, putting litigants to much useless trouble and expense. No authority has been cited to sustain such a practice. In Root v. Woolworth, supra [150 U.S. 401, 14 S.Ct. 139, 37 L.Ed. 1123], the Supreme Court said, "The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance, in order to void the relitigation of questions once settled between the same parties, is well settled." One who fraudulently procures a conveyance may not defeat the defrauded grantor, nor protect himself from the consequences of his fraud, by bringing a suit for restoration in another jurisdiction from the one in which his fraud was adjudged. He is concluded by the first judgment. Independent Coal & Coke Co. v. United States, 274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270.

(c) In June, 1939, Phoenix brought another action in the Superior Court of Delaware against the Bridge Company upon a promissory note for $500 and another note for $12,110.19, and also upon two claims, one for $15,000 and one for $7,000. The two notes formed part of the alleged consideration for the issuance of $20,100 of bonds, referred to in item six of the foregoing summary. They are governed by the considerations discussed in paragraph (a) above. The claim for $15,000 is a mere restatement of the claim on the notes in different form and in the alternative. The claim for $7,000 is a claim for interest on the notes. All these claims are sufficiently identified with the controversy adjudged in the foreclosure suit. The decree in that suit concludes them all.

(d) In June, 1939, Phoenix brought another suit against the Bridge Company in the Superior Court of Delaware for $21,262.71 based upon a guaranty agreement dated November 10, 1930. This claim is scheduled under item 2 in the foregoing summary. It is made up of the same items. They were considered in the foreclosure suit and the court found the guaranty agreement to be without consideration, fraudulent and void. The court found that the claimed advancement for the Bridge Company had not been made by Phoenix. Clearly these claims were litigated in the foreclosure suit, and that judgment is conclusive upon the parties.

(e) Another suit in the Delaware court brought by Phoenix against the Bridge Company is based upon two bonds of the face value of $500. each. It is admitted that these bonds are a part of those issued to Anderson (referred to in the foregoing summary) in the total amount of $7,400 for a debt of $6,000. The court below in the foreclosure suit found that they were valid to the extent of the consideration paid for them by Anderson and invalid for all in excess of that amount. Payment of the amount found to be due was ordered.

The issuance of these bonds was a part of the entire fraudulent scheme to which the officers of Phoenix were parties. They can be paid only in the manner provided in the decree in the foreclosure suit. Equity will follow them until they come into the hands of an innocent purchaser for value. Even then the wrongdoer could not acquire them free from the obligation imposed upon them by the court. Phoenix having been a party to the fraud cannot be an innocent purchaser for value no matter when it acquired title. Independent Coal & Coke Co. v. United States, supra, 274 U.S. at page 647, 47 S.Ct. 714, 71 L.Ed. 1270. The adjudication is binding upon it.

(f) Item 1 of the foregoing summary shows that upon the trial of the foreclosure suit Phoenix accounted for $66,275.87 of the consideration claimed to have been given for the bonds of the Bridge Company issued to it by an exchange of bonds for a mortgage on the property of the Bridge Company dated March 10, 1931, in the principal amount of $50,000 and accrued interest and allowance to give an 8% yield on the bonds.

After hearing and considering the evidence in respect of this mortgage the court below in the foreclosure suit found that it was fraudulently issued; "That in truth and in fact no indebtedness of said Bridge Company to the Phoenix Finance System, Inc., existed and the Bridge Company received no consideration for the execution of said mortgage; that the same was and is wholly without consideration, fraudulent and void. At said time [March 10, 1931] said Thompson caused entries to be made on the books of said Bridge Company purporting to show receipt of $50,000 in cash, whereas, in truth and in fact, said amount and no part thereof was received by the Bridge Company."

In its petition for a rehearing or in the alternative for a modification of the decree, Phoenix prayed "that the decree be modified so as to withhold from adjudication the question of the validity of the $50,000 mortgage given by the bridge company to petitioner, reserving the right to petitioner to litigate said mortgage in another action, if it so desires." The petition was denied and this court affirmed.

In the supplemental and ancillary bill the Bridge Company alleges that in 1939 Phoenix caused this mortgage to be recorded, thereby wrongfully causing said mortgage to cast a cloud upon the title to its property; and it prayed that Phoenix be required to surrender the original mortgage and any purported notes secured thereby. The prayer was granted.

Phoenix would relitigate the validity of this mortgage. Its position is that the $50,000 note secured by the mortgage was not introduced in evidence in the foreclosure suit nor was it in issue and, therefore, was not adjudicated. It is not claimed that there was a different consideration for the note than the consideration for the mortgage, which was held to be fraudulent and non-existent. There can be no merit in such a contention. The entire transaction was decreed to be fraudulent and without consideration. The decree is conclusive. "A successful defense on the merits in an action either on the principal debt or the collateral will bar an action on the other." 34 C.J. 853.

In this proceeding the court further found that Phoenix is threatening to prosecute further actions in the courts of Delaware against the Bridge Company on causes of action based upon the alleged consideration for the bonds involved in the foreclosure suit; and the decree enjoined Phoenix, it officers, agents, servants, employees and attorneys from commencing or carrying forward any suits or causes of action involved in or determined in the findings of fact and conclusions and decree dated December 1, 1936 (in the foreclosure suit), and order denying petition for rehearing and modification of decree filed March 4, 1937.

The decree was proper and necessary to secure to the Bridge Company the full benefit of the decree and orders in the foreclosure suit.

3. It is claimed on this appeal that the injunction granted is in violation of section 265 of the Judicial Code, 28 U.S.C.A. § 379, and that it results in a denial of the rights of Phoenix guaranteed by the Fifth Amendment to the Constitution. These contentions may be considered together because unless the decree violates section 265 it does not deprive Phoenix of any of its constitutional rights.

The pleading by which the Bridge Company invoked the jurisdiction of the district court in this proceeding is without doubt a supplemental and ancillary bill in equity, intended to effectuate the adjudication and orders made by the same court in the foreclosure suit. In Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 93 A.L.R. 195, the Supreme Court said: "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. (Citing authorities) * * *. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved, and notwithstanding the provisions of section 265 of the Judicial Code * * * U.S.C., title 28, § 379 (28 U.S.C.A. § 379)." Citing authorities. The leading authorities upon this proposition are collected in the opinion of this court in Toucey v. New York Life Ins. Co., 8 Cir., 102 F.2d 16, 122 A.L.R. 1415, at page 23 of the report. See, also, Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629. This contention is without merit.

4. Phoenix contends that by a recognized application of the equitable maxim that "He who seeks equity must do equity", the Bridge Company by its bill of complaint supplemental and ancillary to the decree in the foreclosure suit was required to show that such decree was a "right" decree and that Phoenix was entitled to show that such decree should not be implemented.

In support of this contention counsel cite Pomeroy on Equity Jurisprudence, Vol. 1, 3d Ed., sec. 388; Union Central Life Ins. Co. v. Drake, 8 Cir., 214 F. 536, 538; United States v. Debell, 8 Cir., 227 F. 775, 779; and Levy v. Kress & Co., 8 Cir., 285 F. 836, 839. These authorities fall far short of supporting the con-

tention of Phoenix. They place no such burden upon the victim of a wrongdoer when he attempts to secure the fruits of a former judgment against such wrongdoer. The principle of the authorities relied upon is stated in the Levy case, supra, to be—"that he who seeks equity must do equity, and in a case in which the rules and principles of equity demand it a court of chancery may condition the grant of relief sought from it by a party to a suit, with the enforcement of a claim or an equity held by the opposing party, although by reason of the statute of limitations, or by reason of a former judgment or otherwise, the latter could not enforce his claim in any other way." The principle thus stated is not in conflict with the "clean hands doctrine", which is also a venerable principle of equitable jurisprudence. It purports to apply only where "the rules and principles of equity demand it", not where it would defeat some salutary principle of equity. As shown in the authorities relied upon by appellant restoration is granted in a subsequent suit only where the parties to the transaction were in pari delicto, or where the successful party in the first suit was at fault in regard to the particular item sought to be recovered, or where the unsuccessful party was not at fault. The rule is applied generally for the protection of innocent parties and not for the benefit of parties whose hands were found to be unclean in the first suit. Compare Thornton v. Carter, supra.

In further support of this contention Phoenix relies upon a rule stated by Lord Redesdale in Hamilton v. Houghton, 2 Bligh, 169, 4 Eng. Reprints 290, as follows: "The party who comes into a court of equity to have the benefit of a former decree must show that it was a right decree, if the decree appears to be erroneous, the Court cannot carry it into execution."

The foregoing rule is applicable only in cases where a party is seeking to modify or enlarge an incomplete decree and then to enforce it. In such a case the entire cause may be re-examined to determine the existence of equitable grounds for relief. Lawrence Manufacturing Company v. Janesville Cotton Mills, 138 U.S. 552, 561, 11 S.Ct. 402, 34 L.Ed. 1005; Gay v. Parpart, 106 U.S. 679, 699, 1 S.Ct. 456, 27 L.Ed. 256; O'Brien v. Wheelock, 184 U.S. 450, 483, 22 S.Ct. 354, 46 L.Ed. 636; Utah Power & Light Co. v. United States, Ct.Cl., 42 F.2d 304, 308; Kimen v. Atlas Exchange Nat. Bank of Chicago, 7 Cir., 92 F.2d 615, 617; Compton v. Jesup, 6 Cir., 68 F. 263, 294, 315. In Compton v. Jesup, supra, Chief Justice Taft (then Judge Taft) states the rule as follows: "where the aid of a court of equity is invoked to enforce or 'piece out' (as the phrase is) an incomplete decree of another or the same court, the court appealed to may examine the justice of the decree sought to be enforced, and refuse its aid, if it finds the decree inequitable, or may impose, as a condition of its granting relief, any variation or limitation with respect to the operation of the decree which justice and equity may require."

Obviously, the rule has no application in the instant case. The Bridge Company is not seeking to "piece out" an incomplete decree and then to enforce it. All that is sought here is the benefit of the fruits of a decree affirmed by this court. That decree is conclusively presumed to be correct. If it were otherwise there could be no end to litigation, the rule of the finality of judgments would have no efficacy, and the doctrine of res judicata would be anulled.

There remains for consideration the question of the fraud alleged to have been practiced by counsel for the interveners in the foreclosure suit. In response to the supplemental and ancillary bill of the Bridge Company, Phoenix filed an answer and counterclaim in which it asserted the right to litigate the validity of the various items of consideration given by it for the bonds of the Bridge Company. As a ground for this claimed right Phoenix alleged that "To the extent that the findings of this Court as entered December 1, 1936, and its decree are inconsistent with the foregoing allegations, the said findings and decree are contrary to the facts and are the result of the tactics of the interveners and their counsel in the trial of the foreclosure proceedings, first, in presenting to this Court a voluminous record consisting largely of testimony and exhibits relating to immaterial and irrelevant issues, so confused, ambiguous and disorderly as to make it difficult, if not impossible, for the Court to ascertain the facts and to compel the Court to rely upon the representations of counsel, and second, in making false representations or inadvertent misrepresentations with respect to" certain of the alleged items of consideration for the bonds.

Phoenix alleged further that it had not had its day in court for the reason that it believed "that the question of the validity of the bonds or the consideration received by the Bridge Company therefor was reserved for a second stage of the proceedings"; and that this belief was founded in part upon the prevailing practice with respect to foreclosure proceedings in United States courts and in part upon an apparent ruling of the master that such would be the procedure before him.

Upon motion of counsel for the Bridge Company these allegations of the answer and counterclaim were stricken on the ground stated in the order of the court that "Phoenix Finance Corporation is clearly endeavoring to relitigate questions of fact and law which were fully litigated and opportunity given to litigate on the trial of the principal case, in which trial and decision all accounts, indebtedness and matters entering into the consideration of the issue of each and all of the bonds secured by the mortgage sought to be foreclosed were in question, and were considered and determined."

The court, we think, fairly stated the situation presented by the record and the pleadings. Phoenix, in effect, sought to annul the findings and decree of the court in the foreclosure proceeding on account of the assumed neglect or misapprehension of the issues by its own counsel and counsel for the trustees in matters arising on the trial. This it cannot do for two reasons.

First, Phoenix could not by a direct proceeding have impeached the former decree for this alleged fraud, because, even if it were sufficient to invalidate that decree, no valid reason is shown why such fraud was not interposed and brought to the attention of the court in the foreclosure suit; and having failed to present these matters at the proper time it cannot collaterally attack the decree in an answer and counterclaim in this ancillary proceeding. Root v. Woolworth, supra.

Second, if indeed these allegations may be said to constitute fraud at all, such fraud adhered in the trial of the foreclosure suit and is not a ground for annulling the decree. It was said by the Supreme Court in United States v. Throckmorton, 98 U.S. 61, 68, 25 L.Ed. 93, that "the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." See Atchison, T. & S. F. Ry. Co. v. United States, 8 Cir., 106 F.2d 899, 903; Continental Nat. Bank v. Holland Banking Co., 8 Cir., 66 F.2d 823, 830.

Aside from these rules of equity which in addition to the reason assigned by the court below justify the order striking the allegations from the answer and counterclaim, the facts pleaded do not constitute fraud. Voluminous, ambiguous and disorderly testimony offered and received on a trial, if permitted, is not a fraud upon a party participating in the trial. His counsel has every opportunity to analyze the testimony for the court. The same thing is true in respect of an "inadvertent misrepresentation" of counsel as to the issues. His opponent being present he should at the time call such matters to the attention of the court. Neither is a misconception of the law controlling the issues by counsel for either party a fraud upon his client for which equity can or will give relief in a subsequent proceeding to enforce the judgment against him. The court did not err in striking the allegations of fraud from the answer and counterclaim.

The decree appealed from is affirmed.